# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DAREN LEVIN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No.: |
| v. | ) ) | <u>CLASS ACTION</u> |
| RESOURCE CAPITAL CORP., JONATHAN Z. COHEN,  DAVID J. BRYANT, and  ELDRON C. BLACKWELL, | ) ) ) ) | COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS |
| Defendants. | ) ) ) ) ) ) | <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Daren Levin ("Plaintiff"), by his attorneys, except for his own acts, which are alleged on knowledge, alleges the following based upon the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Resource Capital Corp. ("Resource Capital" or the "Company"), as well as regulatory filings and reports, securities analyst reports and advisories by Resource Capital, press releases and other public statements issued by Resource Capital, and media reports about Resource Capital. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all persons who purchased Resource Capital common stock between March 2, 2015 and August 4, 2015, (the "Class Period"), seeking remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff's claims are asserted against Resource Capital and certain of Resource Capital's executive officers and directors.

2.      Resource Capital is a diversified real estate finance company that focuses on commercial real estate, commercial real estate-related assets, and, to a lesser extent, commercial finance assets. The Company is organized as a real estate investment trust ("REIT").

3.      Since March 2, 2015, Resource Capital and certain of its current and former executive officers and directors have materially misrepresented the risk of the Company's commercial loans portfolio and its processes and controls for assessing the quality of its portfolio.

4.      On August 4, 2015, after the stock market closed, Resource Capital announced its financial results for the quarter ended June 30, 2015. The Company disclosed GAAP net loss of $31.0 million during the quarter. Contributing to the net loss, indeed the cause thereof, was the

Company's recording of an allowance for loan loss on a mezzanine loan position of $41.1 million in total. As disclosed in the August 4 press release, "[t]he last three luxury brand hotel properties securing the loan are located in or near San Juan, Puerto Rico, and recent economic and credit disruptions in Puerto Rico resulted in events that caused the Company to determine that the loan should be fully reserved."

5.      As a result of the news, the trading price of Resource Capital's common stock plunged from its closing price of $3.48 on August 4, 2015, to close at $3.05 on August 5, 2015, a single-day loss of more than 12%, on extremely heavy trading.  Accordingly, the announcement wiped out approximately $54.6 million of Resource Capital's market capitalization.

## JURISDICTION AND VENUE

6.      The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and § 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 27 of the Exchange Act, 15 U.S.C. §78aa.

8.      This Court has jurisdiction over each Defendant named herein because each Defendant is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and § 27 of the Exchange Act because Resource Capital resides in this District—Resource Capital's principal executive offices are located at 712 5th Avenue, 12th Floor, New York, New York 10019.

## PARTIES

10.     Plaintiff purchased Resource Capital's stock during the class period as set forth herein and in his certification filed herewith.

11.     Resource Capital is a corporation organized and existing under the laws of Maryland.  The Company maintains its principal executive offices at 712 5th Avenue, 12th Floor, New York, New York 10019. Resource Capital's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "RSO."

12.     Defendant Jonathan Z. Cohen ("Cohen") has been President, Chief Executive Officer, and a director of Resource Capital since 2005.

13.     Defendant David J. Bryant ("Bryant") has been Senior Vice President, Chief Financial Officer, and Treasurer of Resource Capital since 2006.

14.     Eldron C. Blackwell ("Blackwell") has been Vice President and Chief Accounting Officer of Resource Capital since March 2014.

15.     Cohen, Bryant, and Blackwell are collectively referred to herein as the "Individual Defendants."

16.     Resource Capital and the Individual Defendants are collectively referred to herein as "Defendants."

## CONTROL PERSON ALLEGATIONS

17.     By reason of the Individual Defendants' positions with the Company as executive officers (and in Cohen's case, as a director as well) the Individual Defendants possessed the power and authority to control the contents of Resource Capital's annual and quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after

3

their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material, non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Resource Capital is a diversified real estate finance company that focuses on commercial real estate, commercial real estate-related assets, and, to a lesser extent, commercial finance assets. The Company is organized as a REIT.

19.     According to the Company's Form 10-Q filed with the SEC on August 7, 2015, in 2007, Resource Capital acquired a subordinated mezzanine loan position. Originally, the loan was supported by a portfolio of 13 hotel properties, most of which were luxury brand hotels.

20.     The Puerto Rican economy has been mired in a recession since around 2006. According to an article in *USA Today*, by 2014, Standard and Poor's decided to downgrade Puerto Rico's debt securities to junk status.[1]

### The Material Misrepresentations and Omissions

21.     From Resource Capital's acquisition of the subordinated mezzanine loan position through the end of the Class Period, the Company never disclosed its exposure to the Puerto Rican economy.

---

[1] John Waggoner, *Puerto Rico's debt downgraded to junk*, USA Tody, Feb. 5, 2014, available at: http://www.usatoday.com/story/money/markets/2014/02/05/puerto-rico-downgraded-to-junk/5222499/ (accessed on Aug. 12, 2015).

22.     On March 2, 2015, the beginning of the Class Period, Resource Capital filed an annual report on Form 10-K with the SEC for the fiscal year ended December 31, 2014 ("10-K"). The 10-K was signed by Defendant Cohen and included, as Exhibits 31.1 and 31.2 thereto, certifications pursuant to the Sarbanes-Oxley Act of 2002 signed by Defendants Cohen and Bryant, respectively ("SOX Certifications").  Specifically, they each certified the following:

1.  I have reviewed this report on Form 10-K for the year ended December 31, 2014 of Resource Capital, Corp.;

2.  Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.  Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.  The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

    a.  Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b.  Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    c.  Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of

the end of the period covered by this report based on such evaluation; and

d. Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a. All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b. Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

23.     The 10-K misled investors about the Company's practices relating to impairment of loans and allowance for loan losses by stating the following, which omits to disclose that the Company failed to follow these practices with respect to its exposure to the Puerto Rican economy:

*Allowance for Loan Loss*

The Company maintains an allowance for loan loss.  For the Company's bank and CRE loan portfolios, loans held for investment are first individually evaluated for impairment to determine whether a specific reserve is required.  Loans that are not determined to be impaired individually are then evaluated for impairment as a homogeneous pool of loans with substantially similar characteristics so that a general reserve can be established, if needed.  The reviews are performed at least quarterly.

The Company considers a loan to be impaired if one of two conditions exists.  The first condition is if, based on current information and events, management believes it is probable that the Company will be unable to collect all amounts due according to the contractual terms of the loan agreement.  The second condition is

if the loan is deemed to be a troubled-debt restructuring ("TDR") where a concession has been given to a borrower in financial difficulty. These TDRs may not have an associated specific loan loss allowance if the principal and interest amount is considered recoverable based on current market conditions, expected collateral performance and/or guarantees made by the borrowers.

When a loan is impaired under either of these two conditions, the allowance for loan losses is increased by the amount of the excess of the amortized cost basis of the loan over its fair value. Fair value may be determined based on the present value of estimated cash flows; on market price, if available; or on the fair value of the collateral less estimated disposition costs. When a loan, or a portion thereof, is considered uncollectible and pursuit of collection is not warranted, the Company will record a charge-off or write-down of the loan against the allowance for loan losses.

An impaired loan may remain on accrual status during the period in which the Company is pursuing repayment of the loan; however, the loan would be placed on non-accrual status at such time as (i) management believes that scheduled debt service payments will not be met within the coming 12 months; (ii) the loan becomes 90 days delinquent; (iii) management determines the borrower is incapable of, or has ceased efforts toward, curing the cause of the impairment; or (iv) the net realizable value of the loan's underlying collateral approximates the Company's carrying value for such loan. While on non-accrual status, the Company recognizes interest income only when an actual payment is received. When a loan is placed on non-accrual, previously accrued interest is reversed from interest income.

For the Company's residential mortgage loans, the allowance is based upon management's periodic review of the collectability of the loans in light of historical experience, the nature and amount of the loan portfolio, adverse situations that may affect the borrower's ability to repay, estimated value of any underlying collateral, and prevailing economic conditions. This evaluation is inherently subjective, as it requires estimates that are susceptible to significant revision as more information becomes available. The allowance consists of specific and general components. The specific component relates to loans that are classified as doubtful, substandard, or special mention. For such loans that are also identified as impaired, an allowance is established when the discounted cash flows (or collateral value or observable market price) of the impaired loan are lower than the carrying value of that loan. A general component is maintained to cover uncertainties that could affect management's estimate of probable losses. The general component of the allowance reflects the margin of imprecision inherent in the underlying assumptions used in the methodologies for estimating specific and general losses in the portfolio.

Loans that experience insignificant payment delays and payment shortfalls generally are not classified as impaired. Management determines the significance of payment delays and payment shortfalls on a case-by-case basis, taking into

7

consideration all of the circumstances surrounding the loan and the borrower, including the length of the delay, the reasons for the delay, the borrower's prior payment record, and the amount of the shortfall in relation to the principal and interest owed. Impaired loans are carried at fair value and are measured on a nonrecurring basis. The fair value is determined using unobservable inputs including estimates of selling costs (Level 3).

24.     The 10-K also materially misrepresented the risk level of Resource Capital's commercial real estate loans portfolio by stating the following, which omits to disclose the Company's increased risk with respect to its exposure to the Puerto Rican economy:

### Commercial Real Estate Loans

We use a risk grading matrix to assign grades to commercial real estate loans. Loans are graded at inception and updates to assigned grades are made continually as new information is received.  Loans are graded on a scale of 1-4 with 1 representing our highest rating and 4 representing our lowest rating.  We value loans that are sold after the period end at the lower of our fair market value or cost, net of any allowances and costs associated with the loan sales. In addition to the underlying performance of the loan collateral, we consider such things as the strength of underlying sponsorship, payment history, collectability of interest, structural credit enhancements, market trends and loan terms in grading our commercial real estate loans.

Credit risk profiles of commercial real estate loans were as follows (in thousands):

| | Rating 1 | Rating 2 | Rating 3 | Rating 4 | Held for Sale | Total |
|---|---|---|---|---|---|---|
| **As of December 31, 2014:** | | | | | | |
| Whole loans | $ 1,231,092 | $ 32,500 | $ — | $ — | $ — | $ 1,263,592 |
| B notes | 16,072 | — | — | — | — | 16,072 |
| Mezzanine loans | 45,432 | 21,934 | — | — | — | 67,366 |
| | $ 1,292,596 | $ 54,434 | $ — | $ — | $ — | $ 1,347,030 |
| | | | | | | |
| **As of December 31, 2013:** | | | | | | |
| Whole loans | $ 680,718 | $ 32,500 | $ 32,571 | $ — | $ — | $ 745,789 |
| B notes | 16,205 | — | — | — | — | 16,205 |
| Mezzanine loans | 51,862 | 12,455 | — | — | — | 64,317 |
| | $ 748,785 | $ 44,955 | $ 32,571 | $ — | $ — | $ 826,311 |

All of our commercial real estate loans were performing as of December 31, 2014 and 2013.

25.     On May 11, 2015, Resource Capital filed a quarterly report on Form 10-Q with the SEC for the quarter ended March 31, 2015 ("May 10-Q"). The May 10-Q was signed by

Defendants Bryant and Blackwell, and also included, attached as Exhibits 31.1 and 31.2 thereto, SOX Certifications signed by Defendants Cohen and Bryant, respectively, that are substantially similar in content to the ones filed in connection with the 10-K.

26.     The May 10-Q continued to materially misrepresent the risk level of Resource Capital's commercial real estate loans portfolio by stating the following, which omits to disclose the Company's increased risk with respect to its exposure to the Puerto Rican economy:

### Commercial Real Estate Loans

The Company uses a risk grading matrix to assign grades to commercial real estate loans.  Loans are graded at inception and updates to assigned grades are made continually as new information is received.  Loans are graded on a scale of 1-4 with 1 representing the Company's highest rating and 4 representing its lowest rating.  The Company also designates loans that are sold after the period end at the lower of their fair market value or cost, net of any allowances and costs associated with the loan sales.  In addition to the underlying performance of the loan collateral, the Company considers metrics such as the strength of underlying sponsorship, payment history, collectability of interest, structural credit enhancements, market trends and loan terms in grading its commercial real estate loans.

Credit risk profiles of commercial real estate loans were as follows (in thousands):

| | Rating 1 | Rating 2 | Rating 3 | Rating 4 | Held for Sale | Total |
|---|---|---|---|---|---|---|
| **As of March 31, 2015** | | | | | | |
| Whole loans | $ 1,329,882 | $ 32,500 | $ — | $ — | $ — | $ 1,362,382 |
| B notes | 16,031 | — | — | — | — | 16,031 |
| Mezzanine loans | 45,417 | 22,054 | — | — | — | 67,471 |
| | $ 1,391,330 | $ 54,554 | $ — | $ — | $ — | $ 1,445,884 |
| | | | | | | |
| **As of December 31, 2014:** | | | | | | |
| Whole loans | $ 1,231,092 | $ 32,500 | $ — | $ — | $ — | $ 1,263,592 |
| B notes | 16,072 | — | — | — | — | 16,072 |
| Mezzanine loans | 45,432 | 21,934 | — | — | — | 67,366 |
| | $ 1,292,596 | $ 54,434 | $ — | $ — | $ — | $ 1,347,030 |

All of the Company's commercial real estate loans were current as of March 31, 2015 and December 31, 2014.

**The Truth Emerges**

27.    The truth finally began to emerge when on August 4, 2015, after the close of the market, Resource Capital announced its financial results for the quarter ended June 30, 2015. The Company disclosed GAAP net loss of $31.0 million during the quarter. Contributing to the net loss, indeed the cause thereof, was the Company's recording of an allowance for loan loss on a mezzanine loan position of $41.1 million in total. As disclosed in the August 4, 2015 press release, "[t]he last three luxury brand hotel properties securing the loan are located in or near San Juan, Puerto Rico, and recent economic and credit disruptions in Puerto Rico resulted in events that caused the Company to determine that the loan should be fully reserved."

28.    As a result of the news, the trading price of Resource Capital's common stock plunged from its closing price of $3.48 on August 4, 2015, to close at $3.05 on August 5, 2015, a single-day loss of more than 12%, on extremely heavy trading.  Accordingly, the announcement wiped out approximately $54.6 million of Resource Capital's market capitalization.

## LOSS CAUSATION

29.    During the Class Period, as detailed herein, Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Resource Capital's common stock and operated as a fraud or deceit on Class Period purchasers of Resource Capital common stock by materially misleading the investing public. Later, when Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the trading price of Resource Capital's common stock fell precipitously, as the prior artificial inflation came out of the price over time. As a result of their purchases of Resource Capital's common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## FRAUD-ON-THE-MARKET DOCTRINE

30.     At all relevant times, the market for Resource Capital's common stock was an efficient market for the following reasons, among others:

a)     Resource Capital common stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

b)     Resource Capital filed periodic public reports with the SEC and the NYSE; and

c)     Resource Capital regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services.

31.     As a result of the foregoing, the market for Resource Capital's common stock promptly digested current information regarding Resource Capital from all publicly available sources and reflected such information in the prices of the securities. Under these circumstances, all purchasers of Resource Capital common stock during the Class Period suffered similar injury through their purchase of Resource Capital common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

32.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking

statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Resource Capital who knew that the statement was false when made.

### CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Resource Capital common stock during the Class Period (the "Class"). Excluded from the Class are Defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

34.     The members of the Class are so numerous that joinder of all members is impracticable, since Resource Capital has millions of shares of stock outstanding and because the Company's shares were actively traded on the NYSE.  As of August 5, 2015, Resource Capital had more than 134 million shares issued and outstanding. While the exact number of Class members in unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class and that they are geographically dispersed.

35.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members, including:

(a)     whether the Exchange Act was violated by Defendants;

(b)      whether Defendants omitted and/or misrepresented material facts in their publicly disseminated reports, press releases, and statements during the Class Period;

(c)      whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)      whether Defendants participated and pursued the fraudulent scheme or course of business complained of herein;

(e)      whether Defendants acted willfully, with knowledge or recklessly in omitting and/or misrepresenting material facts;

(f)      whether the price of Resource Capital common stock was artificially inflated during the Class Period as a result of the material nondisclosures and/or misrepresentations complained of herein; and

(g)      whether the members of the Class have sustained damages as a result of the decline in value of Resource Capital's common stock when the truth was revealed, and if so, what is the appropriate measure of damages.

36.    Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct in a substantially identical manner.

37.    Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

38.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of Section 10(b) of
### the Exchange Act and SEC Rule 10b-5
### (Against All Defendants)

39.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

40.     This Count is asserted by Plaintiff on behalf of themselves and the Class against all the Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. C 240.10b-5, promulgated thereunder.

41.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Resource Capital's common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Resource Capital's common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, the Defendants, and each of them, took the actions set forth herein.

42.     Defendants, by the use of means and instrumentalities of interstate commerce: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (iii) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers and acquirers of the Company's common stock in an effort to maintain artificially high market prices for Resource Capital's common stock in violation of Section 10(b) of the Exchange Act and Rule 10-5.

43.     As a result of their making and/or their substantial participation in the creation of affirmative statements and reports to the investing public, Defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC, as embodied in SEC Regulation S-K (17 C.F.R. § 229.10, et seq.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations and performance so that the market prices of the Company's publicly traded securities would be based on truthful, complete, and accurate information.  Defendants' material misrepresentations and omissions as set forth herein violated that duty.

44.     Defendants engaged in the fraudulent activity described above knowingly and intentionally or in such a reckless manner as to constitute willful deceit and fraud upon Plaintiff and the Class.  Defendants knowingly or recklessly caused their reports and statements to contain misstatements and omissions of material fact as alleged herein.

45.     As a result of Defendants' fraudulent activity, the market price of Resource Capital common stock was artificially inflated during the Class Period.

46.     In ignorance of the true financial condition of Resource Capital, Plaintiff and other members of the Class, relying on the integrity of the market and/or on the statements and reports of Resource Capital containing the misleading information, purchased or otherwise acquired Resource Capital's common stock at artificially inflated prices during the Class Period.

47.     Plaintiff and the Class's losses were proximately caused by Defendants' active and primary participation in Resource Capital's scheme to defraud the investing public by, among other things, failing to fully and accurately disclose to investors adverse material information regarding the Company. Plaintiff and other members of the Class purchased Resource Capital's common stock in reliance on the integrity of the market price of those shares,

and Defendants manipulated the trading price of Resource Capital's common stock through their misconduct as described herein. Plaintiff's and the Class's losses were a direct and foreseeable consequence of Defendants' concealment of the true financial condition of Resource Capital.

48.    Throughout the Class Period, Defendants were aware of material non-public information concerning Resource Capital's fraudulent conduct (including the false and misleading statements described herein). Throughout the Class Period, Defendants willfully and knowingly concealed this adverse information, and Plaintiff's and the Class's losses were the foreseeable consequence of Defendants' concealment of this information.

49.    As a direct and proximate cause of the Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their respective purchases and sales of Resource Capital common stock during the Class Period.

## COUNT II
### Violation of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

50.    Plaintiff incorporates by reference and realleges each and every allegation above as though fully set forth herein.

51.    During the Class Period, the Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public. Plaintiff and other members of the Class had no access to such information, which was, and remains solely under the control of the Defendants.

52.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware (or recklessly disregarded) that materially false and misleading statements were being issued by the Company and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  Throughout the Class Period, the Individual Defendants were able to, and did, control the contents of the Company's SEC filings, reports, press releases, and other public statements.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed such filings, reports, releases and other statements prior to or shortly after their issuance and had the ability or opportunity to prevent their issuance or to cause them to be corrected.

53.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Resource Capital's business, the information contained in its filings with the SEC, and its public statements. Moreover, the Individual Defendants made or directed the making of affirmative statements to securities analysts and the investing public at large, and participated in meetings and discussions concerning such statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were false and misleading. As a result, the Individual Defendants are responsible for the accuracy of Resource Capital's corporate releases detailed herein and is therefore responsible and liable for the misrepresentations contained herein.

54.     The Individual Defendants acted as controlling persons of Resource Capital within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Resource Capital to

engage in the wrongful conduct complained of herein. The Individual Defendants controlled Resource Capital and all of its employees. As alleged above, Resource Capital is a primary violator of Section 10(b) of the Exchange Act and SEC Rule 10b-5.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

55.     As a direct and proximate result of the wrongful conduct of Resource Capital and the Individual Defendants, Plaintiff and members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment as follows:

(A)     Declaring this action to be a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and certifying Plaintiff as a representative of the Class and his counsel as Class counsel;

(B)     Awarding Plaintiff and the members of the Class damages, including interest;

(C)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including and attorneys' fees; and

(D)     Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 9, 2015                      /s/ Julia Sun
                                             **LEVI & KORSINSKY, LLP**
                                             Nicholas I. Porritt
                                             Julia J. Sun
                                             Adam M. Apton
                                             Michael B. Ershowsky (to be admitted)
                                             LEVI & KORSINSKY, LLP
                                             30 Broad Street, 24th Floor
                                             New York, New York 10004
                                             Telephone:  (212) 363-7500
                                             Facsimile:  (212) 363-7171

                                             *Counsel for Plaintiff and Proposed Lead Counsel
                                             for the Class*

Darren Levin transactions in Resource Capital Corp. (RSO)
Period: November 5, 2010 through August 4, 2015 inclusive:

| Date of Transaction | Buy (B) or Sell (S) | Quantity (#) | Price per Share ($) |
|---|---|---|---|
| 04/15/2015 | B | 1,106 | 4.5200 |
| 06/22/2015 | B | 500 | 4.3001 |
| 07/17/2015 | B | 100 | 3.8150 |
| 07/17/2015 | B | 690 | 3.8199 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS**

I, DAREN LEVIN, duly certify and say, as to the claims asserted under the federal securities laws, that:

1. I have reviewed a complaint filed in this action.

2. I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3. I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. My holdings and/or transactions involving Resource Capital Corp. securities which are the subject of this litigation are set forth in the chart attached hereto.

5. Within the last 3 years, I have not sought to serve nor have I served as a class representative in any federal securities fraud case.

6. I will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I hereby certify, under penalty of perjury, that the foregoing is true and correct. Executed this 1st day of September 2015.

Signed:

NAME: Daren Levin