# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DAREN LEVIN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Docket No.: 1:15-cv-07081-LLS |
| v. | ) ) | <u>CLASS ACTION</u> |
| RESOURCE CAPITAL CORP., JONATHAN Z. COHEN, DAVID J. BRYANT, ELDRON C. BLACKWELL, and DAVID E. BLOOM, | ) ) ) ) | |
| Defendants. | ) ) ) ) | |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement, dated February 5, 2018 (the "Settlement" or the "Stipulation") is made and entered into between Douglas Drees and Allen Altman on behalf of themselves and each of the Class Members, on the one hand, and Resource Capital Corp., Jonathan Z. Cohen, David J. Bryant, Eldron C. Blackwell, and David E. Bloom (collectively "Defendants"), on the other hand, by their respective undersigned counsel and subject to the approval of the United States District Court for the Southern District of New York, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

This Settlement is intended by the Settling Parties to fully, finally, and forever compromise, resolve, discharge, and settle the Released Claims as against the Released Parties and result in the complete dismissal of this Action (as those terms are defined below) with prejudice, upon and subject to the terms and conditions herein.

### WHEREAS:

A.     All terms with initial capitalization not otherwise defined in the text hereof shall have the meanings ascribed to them in paragraph 1 below.

B.      On September 9, 2015, plaintiff Daren Levin filed a class action complaint in the United States District Court for the Southern District of New York. ECF No. 1

C.      On November 24, 2015, the Court appointed Douglas Drees as Lead Plaintiff and Levi & Korsinsky LLP as Lead Counsel pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4. ECF No. 21.

D.      On February 12, 2016, Lead Plaintiff filed the Amended Complaint asserting securities fraud claims against Defendants based, inter alia, on allegations that Resource Capital failed to accurately and truthfully disclose that its position in a certain Mezzanine Loan was, in part, secured by collateral located in Puerto Rico and that the Company's disclosures relating to the loan were otherwise misleading. ECF No. 25.

E.      On April 12, 2016, the Defendants moved to dismiss the Amended Complaint. ECF No. 26. Lead Plaintiff filed his opposition to the motion to dismiss on June 13, 2016. ECF No. 30. Defendants filed a brief in reply and further support of the motion to dismiss on July 28, 2016. ECF No. 33.

F.      The District Court denied the motion to dismiss on October 5, 2016. ECF No. 36.

G.      On November 18, 2016, the Parties filed a Rule 26(f) Civil Case Management Plan and Scheduling Order. ECF No. 41.

H.      On November 16, 2016, the Parties served Initial Disclosures.

I.      On November 22, 2016, the District Court Approved the Scheduling Order and the Protective Order. ECF Nos. 42-3.

J.      On November 23, 2016, the parties served document requests, including Lead Plaintiff's First Request for the Production of Documents, and Defendants' First Request for the Production of Documents.

K.      Commencing after service of these requests, the parties engaged in extensive document production, including the production by Defendants of certain documents responsive to Plaintiffs' First Request for Production of Documents.

L.      On April 10, 2017, the Parties participated in a mediation session held before mediator Robert A. Meyer, Esq. of Judicial Arbitration and Mediation Services, but were unsuccessful in coming to an agreement.

M.      The parties continued to engage in discovery following the mediation. Discovery included document productions from Resource Capital and several non-parties, including Moody's, Fitch Ratings, BlackRock, Grant Thornton LLP. In total, these parties produced over 170,000 pages of discovery.

N.      On June 1, 2017, Lead Plaintiff filed the Second Amended Complaint naming Allen Altman, Individually and as Trustee of the Allen Altman & Catherine Altman Living Trust as an additional plaintiff and expanding the "Class" to include, in addition to common stockholders, persons and entities who purchased Resource Capital Series B and Series C preferred shares between October 31, 2012 and August 5, 2015. The Second Amended Complaint's substantive allegations were identical to the substantive allegations in the Amended Complaint. ECF No. 55.

O.      On June 2, 2017, Lead Plaintiff moved for class certification in the Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel (the "Class Certification Motion"). ECF No. 56.

P.      Between June 27, 2017 and July 26, 2017, Defendants deposed Lead Plaintiff, Altman, and Plaintiffs' expert Steven Feinstein, Ph.D.

Q.      On August 18, 2017, Defendants filed a brief in opposition to Lead Plaintiff's Class Certification Motion. ECF Nos. 69-70.

R.     On August 30, 2017, Lead Plaintiff served a Second Request for the Production of Documents. Responses and objections to this request were served on September 6, 2017 and additional documents were produced by Defendants thereafter.

S.     On September 8, 2017, Plaintiffs deposed Defendants' expert Daniel Garrett.

T.     The District Court granted Lead Plaintiff's Class Certification Motion on November 22, 2017, appointing Lead Plaintiff and Altman as Class Representatives of a class consisting of all persons who purchased or otherwise acquired Resource Capital's Common Shares, Series B Preferred Shares, and Series C Preferred Shares during the Class Period, with certain exceptions set forth in the definition of Class in paragraph 1 below.  ECF No. 77

U.     On November 28, 2017, following several conversations between the Settling Parties and their mediator, Robert Meyer, Mr. Meyer issued a "mediator's proposal" in an attempt to resolve the matter. The Settling Parties accepted the proposal in principle, subject to certain conditions, including but not limited to the negotiation of a mutually satisfactory long-form settlement agreement. This Stipulation reflects the substantive terms of the proposal and, subject to Court approval and the satisfaction of the terms and conditions set forth herein, will resolve the Action.

V.     Defendants deny any liability to Plaintiffs and the Class, deny any and all allegations of wrongdoing, and maintain that they have at all times acted in good faith and in compliance with the law. This Settlement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any Defendant with respect to any claim or of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that Defendants have asserted. Plaintiffs and Defendants recognize, however, that the Action has been prosecuted by Plaintiffs and Lead Counsel and defended by Defendants and Defendants' Counsel in good faith and in compliance with Rule 11 of the Federal Rules of Civil Procedure, that the Action is being voluntarily settled after receiving advice of counsel, and that

the Settlement, as embodied herein, is fair, reasonable, and adequate. This Settlement shall not be construed or deemed to be a concession by Plaintiffs, or any Class Member, of any infirmity in the claims asserted in this Action.

W.     Lead Counsel has conducted an extensive investigation into the claims and the underlying events and transactions alleged in the Complaint, including the maximum amount of damages that Lead Counsel believes are potentially recoverable by the Class based on the allegations sustained by the Court at the pleading stage. Based upon this investigation, and taking into consideration the immediate and significant monetary benefit the Class Members will receive from the Settlement, weighed against the risks of litigation, the Plaintiffs and Lead Counsel have concluded that the terms and conditions of this Settlement, as embodied herein, are fair, reasonable, and adequate to Plaintiffs and to the other Class Members, and in their best interests, and have agreed to settle the claims raised in the Action pursuant to the terms and conditions of this Settlement.

NOW THEREFORE, without any admission or concession on the part of Plaintiffs of any lack of merit of the Action whatsoever, and without any admission or concession of any liability or wrongdoing or lack of merit in the defenses whatsoever by Defendants, it is hereby STIPULATED AND AGREED, by and among the Settling Parties, through their respective counsel, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that all Released Claims as against the Released Parties and all Settled Defendants' Claims, shall be compromised, settled, released, and dismissed with prejudice, upon and subject to the following terms and conditions and in consideration of the benefits flowing to the parties from this Settlement:

## DEFINITIONS

1.     As used in this Settlement the following terms shall have the meanings specified below:

a.     "Action" means the consolidated action pending in this Court under the caption *Levin v. Resource Capital Corp., et al.*, Case No. 15-cv-07081-LLS (S.D.N.Y.).

5

b.      "Altman" means Allen Altman individually, as Trustee of the Allen Altman & Catherine Altman Living Trust, and on behalf of the Class.

c.      "Amended Complaint" means the Amended Complaint filed in this Action on February 12, 2016 (ECF Doc. No. 25).

d.      "Authorized Claimant" means a Class Member who submits a timely and valid Proof of Claim Form to the Claims Administrator, that satisfies all the requirements set forth on the Proof of Claim Form in accordance with the requirements established by the Court, and who, subject to Court approval, will receive a payment from the Net Settlement Fund.

e.      "Claim" means a completed and signed Proof of Claim Form submitted by a Class Member, or on their behalf, to the Claims Administrator in accordance with the instructions on the Proof of Claim Form.

f.      "Claimant" means a person or entity that submits a Claim.

g.      "Claims Administrator" means the firm retained by Lead Plaintiff, subject to approval of the Court, to provide all notices approved by the Court to potential Class Members and to administer Claims. Lead Plaintiff has selected Epiq Class Action & Claims Solutions, Inc. as the Claims Administrator.

h.      "Class" means the class certified by the Court on November 22, 2017 consisting of all persons or entities who purchased or otherwise acquired a legal or beneficial ownership interest in Resource Capital Common Shares, Series B Preferred Shares, or Series C Preferred Shares between October 31, 2012 and August 5, 2015. Excluded from the Class are: (1) Defendants and members of the immediate family of any Defendant; (2) any entity in which any Defendant has, or had during the Class Period, a controlling interest; (3) the officers and directors of Resource Capital during the Class Period; and (4) the legal representatives, agents,

executors, heirs, successors, or assigns of any of the foregoing excluded persons or entities who assert an interest in Resource Capital Common Shares, Series B Preferred Shares, and Series C Preferred Shares through or on behalf of any such excluded persons or entities. Also excluded from the Class are any putative Class Members who exclude themselves by filing a timely and valid request for exclusion in accordance with the requirements set forth in the Notice.

i.      "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

j.      "Class Member" means a person or entity that is a member of the Class and is not otherwise excluded from the Class pursuant to its definition.

k.      "Class Period" means the period from October 31, 2012 through August 5, 2015.

l.      "Common Shares" means shares of Resource Capital's common stock, which trades on the New York Stock Exchange under ticker symbol "RSO."

m.      "Complaint" means the Complaint filed in this Action on September 9, 2015 (ECF Doc. No. 1).

n.      "Complaints" means the Complaint, the Amended Complaint, and the Second Amended Complaint.

o.       "Court" means the United States District Court for the Southern District of New York.

p.      "Defendants" means Resource Capital, Jonathan Z. Cohen, David J. Bryant, Eldron C. Blackwell, and David E. Bloom.

q.      "Defendants' Counsel" means the law firm of Covington & Burling LLP.

r.      "Effective Date" means the first date by which all of the following shall have occurred: (1) the Court has entered the Preliminary Approval Order, substantially in the form annexed hereto as Exhibit A; (2) the Settlement Amount has been paid into the Escrow Account; (3) the Court has approved all the material terms set forth in this Stipulation and the proposed settlement embodied herein, following the provision of Settlement Notices to the Class and a Final Approval Hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; (4) the time to exercise the termination rights provided in this Settlement has expired or the termination rights have been waived; and (5) the Court has entered the Judgment, substantially in the form annexed hereto as Exhibit B, which has become Final.

s.      "Escrow Account" means one or more accounts located at the Escrow Agent that are maintained to hold the Settlement Fund, which accounts shall be created, controlled and maintained exclusively by Lead Counsel, acting as agent for Plaintiffs and the Class, and shall be deemed to be in the custody of the Court and remain subject to the jurisdiction of the Court until such time as the Settlement Fund is distributed or returned pursuant to the terms of this Settlement and/or further order of the Court.

t.      "Escrow Agent" means Epiq Class Action & Claims Solutions, Inc., which shall be responsible for overseeing, investing, safeguarding, and distributing the Settlement Fund held in the Escrow Account, pursuant to the terms of this Settlement and any orders entered by the Court, and acting as agent for Lead Plaintiff and the Class.

u.      "FDIC" means the Federal Deposit Insurance Corporation.

v.      "Fee and Expense Order" means an award granting Lead Counsel's attorneys' fees and Litigation Expenses.

w.     "Final" when referring to an order or judgment means: (l) that the time for appeal or appellate review of the order or judgment has expired, and no appeal has been taken; or (2) if there has been an appeal, (a) that the appeal has been decided by all appellate courts without causing a material change in the order or judgment; or (b) that the order or judgment has been upheld on appeal and is no longer subject to appellate review by further appeal or writ of *certiorari.*

x.     "Final Approval Hearing" means the hearing set by the Court in the Preliminary Approval Order pursuant to Rule 23(e) of the Federal Rules of Civil Procedure to consider, among other things, approval of the Settlement.

y.     "Judgment" means the proposed order and final judgment, substantially in the form attached hereto as Exhibit B, to be entered by the Court pursuant to Rule 54(b) of the Federal Rules of Civil Procedure approving the Stipulation and the proposed settlement embodied herein.

z.     "Lead Counsel" means Levi & Korsinsky, LLP.

aa.     "Lead Plaintiff" means Douglas Drees, individually and on behalf of the Class.

bb.     "Litigation Expenses" means the reasonable costs and expenses incurred by Lead Counsel in connection with commencing and prosecuting the Action, for which Lead Counsel intends to apply to the Court for reimbursement from the Settlement Fund. Litigation Expenses may also include reimbursement of the reasonable costs and expenses (including lost wages) of Plaintiffs in accordance with 15 U.S.C. § 78u-4(a)(4).

cc.     "Mezzanine Loan" means the mezzanine loan position for which Resource Capital recorded an allowance for loan loss as of June 30, 2015 by fully reserving the

outstanding loan balance of $38.1 million and reversing accrued interest of $3 million for a total charge to operations of $41.1 million.

dd.     "Net Settlement Fund" means the Settlement Fund less: (1) any Taxes; (2) any Notice and Administration Costs; and (3) any attorneys' fees and Litigation Expenses awarded by the Court.

ee.     "Notice" means the Notice of Pendency of Class Action and Proposed Settlement, substantially in the form attached hereto as Exhibit A-1, which is to be sent to members of the Class.

ff.     "Notice and Administration Costs" means (1) the costs, fees and expenses that are reasonably incurred by the Claims Administrator, as described herein and in the Preliminary Approval Order, in connection with (i) providing Notice to the Settlement Class and (ii) administering the claims process; (2) any Tax Expenses incurred by the Claims Administrator; and (3) the costs, fees and expenses that are reasonably incurred by the Escrow Agent.

gg.     "Opt-Out Threshold" means any of the thresholds set forth in the Supplemental Agreement that provide the Defendants with a right to terminate the Settlement.

hh.     "Plaintiffs" means, collectively, Altman and Lead Plaintiff, individually and on behalf of the Class.

ii.     "Plan of Allocation" means the proposed plan of allocation of the Net Settlement Fund prepared by Lead Counsel, in conjunction with Lead Plaintiff's damages consultant, as set forth in the Notice (or any other plan for the allocation of the Net Settlement Fund among Authorized Claimants that Lead Counsel may propose), that the Court may approve.

jj.      "Preliminary Approval Order" means the order, substantially in the form attached hereto as Exhibit A, to be entered by the Court preliminarily approving the Settlement and the proposed settlement embodied therein.

kk.      "Proof of Claim Form" means the form, substantially in the form attached hereto as Exhibit A-2, that a Class Member must complete should that Class Member seek to share in a distribution of the Net Settlement Fund, subject to entry of a Plan of Allocation and a Class Distribution Order that have both become Final.

ll.      "Released Claims" means any and all claims, debts, demands, rights or causes of action or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, penalties, expenses or liability whatsoever, whenever or wherever incurred), whether based on federal, state, local, foreign, statutory, or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class, individual, or otherwise in nature, whether personal or subrogated, whether suspected or unsuspected, including both known claims and Unknown Claims: (1) that have been asserted in this Action against any of the Released Parties, or (2) that have been or could have been asserted in this Action or any forum by either Plaintiff or any Class Member (or any person or and/or entity claiming by, through, or on behalf of any Plaintiff or Class Member) against any of the Released Parties which in any way, directly or indirectly, arise out of or are related to (i) the Mezzanine Loan or any statement or omission related to the Mezzanine Loan by any Released Party, (ii) any of the factual allegations of the Complaints, (iii) any misrepresentation or omission or alleged misrepresentation or omission by any Released Party before or during the Class Period related to or in connection with Resource Capital or any of its subsidiaries or the

purchase or sale of Common Shares, Series B Preferred Shares or Series C Preferred Shares or any other security issued by Resource Capital, or (iv) any loss sustained or allegedly sustained as a result of the purchase, sale, or holding of Common Shares, Series B Preferred Shares, or Series C Preferred Shares, or other security issued by Resource Capital during the Class Period. Notwithstanding the foregoing, "Released Claims" does not include (i) claims relating to the enforcement of the Settlement or its terms, or (ii) claims asserted derivatively on behalf of Resource Capital, including (without limitation) any of the derivative claims pending in *In re Resource Capital Corp. Shareholder Derivative* Litigation Demand Futile Actions, No. 1:17-cv-00253-LLS (S.D.N.Y.), *In re Resource Capital Corp. Shareholder Derivative Litigation Demand Refused Actions*, No. 1:17-cv-01381-LLS (S.D.N.Y.), or any other pending shareholder derivative action relating to the Mezzanine Loan.

mm.     "Released Claim" means any one of the Released Claims.

nn.     "Released Parties" means (a) Defendants; (b) each of their respective current and former officers, directors, employees, agents, servants, representatives, parents, subsidiaries, affiliates, controlled persons, controlling persons, predecessors, assigns, assignees, counsel, members, managers, equity holders, trustees, accountants, advisors, insurers, family members and partners; (c) as to any person described in clause (b) that is not a natural person, each of their respective current and former officers, directors, employees, agents, servants, representatives, parents, subsidiaries, affiliates, controlled persons, controlling persons, predecessors, assigns, assignees, counsel, members, managers, equity holders, trustees, accountants, advisors, insurers, family members and partners; and (d) as to any of the foregoing, each of their respective heirs, executors, administrators, legal representatives, successors and assigns.

oo.     "Released Party" means any one of the Released Parties.

pp.     "Resource Capital" means Resource Capital Corp.

qq.     "Second Amended Complaint" means the Amended Complaint filed on June 1, 2017 in this Action (ECF Doc. No. 55).

rr.     "Series B Preferred Shares" means shares of Resource Capital's 8.25% Series B Cumulative Redeemable Preferred Stock, which trades on the New York Stock Exchange under ticker symbol "RSO-B."

ss.     "Series C Preferred Shares" means shares of Resource Capital's 8.625% Fixed-to-Floating Series C Cumulative Redeemable Preferred Stock, which trades on the New York Stock Exchange under ticker symbol "RSO-C."

tt.      "Settled Defendants' Claims" means any and all claims, rights or causes of action or liabilities whatsoever, whether based on federal, state, local, statutory, or common law, or any other law, rule, or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, including both known claims and Unknown Claims, that have been or could have been asserted in the Action or any forum by Defendants, and all persons and/or entities claiming by, through, or on behalf of them, against Plaintiffs in their capacity as shareholders, any Class Member in their capacity as shareholders, or their attorneys in connection with the Action, which arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Defendants in this Action. "Settled Defendants' Claims" does not include claims by Defendants or the Released Parties relating to the enforcement of the Settlement or its terms.

uu.     "Settlement" means this Stipulation and Agreement of Settlement.

vv.     "Settlement Amount" means nine million five hundred thousand U.S. dollars ($9,500,000).

ww.    "Settlement Fund" means the Settlement Amount plus any and all income and gains earned thereon, less any losses incurred thereon, after it is deposited into the Escrow Account.

xx.    "Settlement Notices" means the Notice and Summary Notice.

yy.    "Settling Parties" means Plaintiffs, on behalf of themselves and the Class, and Defendants.

zz.    "Summary Notice" means the Summary Notice of Pendency of Class Action and Proposed Settlement, substantially in the form attached hereto as Exhibit A-3, to be published as set forth in the Preliminary Approval Order.

aaa.    "Supplemental Agreement" is an agreement entered into on February 5, 2018 between Lead Counsel and Defendants' Counsel, which is incorporated by reference into this Settlement.

bbb.    "Taxes" means any and all taxes, duties and similar charges (including any estimated taxes, withholdings, interest or penalties and interest thereon) arising in any jurisdiction with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes or tax detriments that may be imposed upon the Released Parties and/or each of their respective counsel with respect to (1) any income and gains earned by the Settlement Fund for any period during which the Settlement Fund may be finally determined to not qualify as a Qualified Settlement Fund (within the meaning contemplated in ¶16 herein) for federal, state or local income tax purposes or (2) any distribution of any portion of the Settlement Fund to Authorized Claimants and other persons entitled hereto pursuant to the Settlement, excluding any portion of the Settlement Fund returned to Defendants as a result of the termination of this Settlement pursuant to ¶¶45-47.

ccc.    "Tax Expenses" means any expenses and costs reasonably incurred by the Claims Administrator in connection with determining the amount of, and paying, any Taxes (including, without limitation, reasonable expenses of tax attorneys and/or accountants and/or other advisors and reasonable expenses relating to the filing of or failure to file all necessary or advisable tax returns).

ddd.    "Unknown Claims" means any and all Released Claims that any Plaintiff or Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties, and any of the Settled Defendants' Claims which Defendants do not know or suspect to exist in his, her or its favor, which if known by him, her or it might have affected his, her or its decision(s) with respect to the Settlement. With respect to any and all Released Claims and Settled Defendants' Claims, Plaintiffs and Defendants stipulate and agree that upon the Effective Date, Plaintiffs and Defendants shall each, for themselves and all persons claiming by, through, or on behalf of them, expressly waive, and each Class Member shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, that is similar, comparable, or equivalent to Cal. Civ. Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs and Defendants acknowledge, and all Class Members and any successors, assigns, and persons claiming through or on behalf of any of the foregoing, shall, by operation of law, be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and Settled Defendants' Claims were separately bargained for and constitute material elements of this Settlement.

## SETTLEMENT CONSIDERATION

1.       Resource Capital shall pay or cause to be paid the Settlement Amount into the Escrow Account within twenty (20) business days after the first date on which both (a) the Preliminary Approval Order has been entered by the Court, and (b) Lead Counsel has provided Defendants' Counsel with full and complete account information necessary for such payment (including wiring instructions) and a tax identification number for the Settlement Fund. If the Settlement Amount is not deposited into the Escrow Account by such date, Lead Plaintiff reserves the right to either (i) move to enforce the terms of this Settlement, including seeking interest on any unpaid amount; or (ii) terminate the Settlement.

2.       The Settlement Amount as set forth above in ¶1 is inclusive of all Lead Counsel's attorneys' fees and Litigation Expenses that may be awarded by the Court, and all Notice and Administration Costs and Taxes, and is the total, full and final amount of all payments to be paid by, or on behalf of, Defendants for the benefit of themselves and the Released Parties, to Plaintiffs, Class Members, Lead Counsel or any other person or entity acting or purporting to act for the benefit of the Class in this Action, in connection with the Stipulation and the proposed Settlement embodied herein.

3.       Immediately upon deposit of the Settlement Amount into the Escrow Account, Defendants and the Released Parties shall have no responsibility for the Settlement Fund, including for any loss of principal.

## CLASS ACTION FAIRNESS ACT OF 2005 ("CAFA") NOTICE

4.       Defendants shall serve any notice of the Settlement required pursuant to CAFA, 28 U.S.C. §171S(b), (the "CAFA Notice") within the time period set forth in said statute and shall, within three (3) business days after service of such CAFA Notice, certify to Lead Counsel that such service has been made. The Settling Parties agree that they will request, pursuant to 28 U.S.C. §I715(d), that the Final Approval Hearing be scheduled for no earlier than ninety (90) days following the deadline for Defendants to serve the CAFA Notice as stated in this paragraph. The parties agree that any delay by Defendants in timely

serving the CAFA Notice will not provide grounds for delay of the Final Approval Hearing or entry of the Judgment. Defendants shall be responsible for all costs and expenses related to the creation and service of the CAFA Notice.

## RELEASES

5.      The obligations incurred pursuant to this Settlement shall be in full and final disposition of the Action as against the Defendants, and shall fully and finally release any and all Released Claims as against all Released Parties and shall also release all of the Settled Defendants' Claims. The Judgment shall, among other things, provide for the dismissal with prejudice of the Action against the Defendants, without costs to any party, except for the payments expressly provided for herein.

6.      Pursuant to the Judgment, upon the Effective Date, Plaintiffs and each Class Member, on behalf of themselves, and their respective past and present directors, officers, employees, agents, trustees, fiduciaries, guardians, servants, consultants, underwriters, attorneys, advisors, representatives, estate trustees, heirs, executors, administrators, predecessors, successors and assigns, and any other person claiming by, through or on behalf of them, shall be deemed by operation of law to (a) have released, waived, discharged and dismissed each and every of the Released Claims against the Released Parties; (b) forever be enjoined from commencing, instituting or prosecuting any or all of the Released Claims against any of the Released Parties; and (c) forever be enjoined from instituting, continuing, maintaining or asserting, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf of any class or any other person, any action, suit, cause of action, claim or demand against any person or entity who may claim any form of contribution or indemnity from any of the Released Parties in respect of any Released Claim.

7.      Pursuant to the Judgment, upon the Effective Date, each of the Defendants, on behalf of themselves, and their respective past and present directors, officers, employees, agents, trustees, fiduciaries, guardians, servants, consultants, underwriters, attorneys, advisors, representatives, estate

trustees, heirs, executors, administrators, predecessors, successors and assigns, and any other person claiming by, through or on behalf of them, shall be deemed by operation of law to (a) have released, waived, discharged and dismissed each and every of the Settled Defendants' Claims; (b) forever be enjoined from commencing, instituting or prosecuting any or all of the Settled Defendants' Claims; and (c) forever be enjoined from instituting, continuing, maintaining or asserting, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf of any class or any other person, any action, suit, cause of action, claim or demand against any person or entity who may claim any form of contribution or indemnity in respect of any Settled Defendants' Claim.

## USE AND TAX TREATMENT OF THE SETTLEMENT FUND

8.     The Settlement Fund shall be held and invested in the Escrow Account as provided in ¶9 hereof. Upon the Effective Date, any interest earned on the Settlement Fund shall be for the benefit of the Class. If the Effective Date does not occur and the Settlement is terminated, the Settlement Fund shall be returned to Defendants pursuant to the terms of ¶47 hereof.

9.     The Escrow Agent shall invest any Settlement Fund in an amount in excess of $200,000 in United States Agency or Treasury Securities having maturities of 180 days or less, money market mutual funds comprised of investments secured by the full faith and credit of the United States government, or an interest-bearing account insured by the FDIC, and shall collect and reinvest all interest accrued thereon. Any Settlement Fund in an amount equal to or less than $200,000 may be held in an interest-bearing bank account insured by the FDIC. The Released Parties shall have no responsibility for, interest in, or liability with respect to the investment decisions of the Escrow Agent. The Settlement Fund shall bear all risk of loss related to the investment of the Settlement Amount pursuant to the terms set forth in this paragraph.

10.     The Escrow Agent shall not disburse the Settlement Fund from the Escrow Account except as provided in this Settlement. All Settlement Funds held in the Escrow Account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the

Settlement Funds are either distributed or returned to Defendants pursuant to the terms and conditions of this Settlement.

11.    Subject to the terms and conditions of this Settlement, the Settlement Fund shall be distributed to pay: (i) Taxes; (ii) Notice and Administration Costs; and (iii) any attorneys' fees and Litigation Expenses awarded by the Court. The balance remaining in the Settlement Fund (the Net Settlement Fund) after payment of items (i)-(iii), shall be distributed to Authorized Claimants as provided herein.

12.    Prior to the Effective Date, the Escrow Agent, without further approval of Defendants or the Court, may pay from the Settlement Fund up to $200,000 in Notice and Administration Costs actually and reasonably incurred. Prior to the Effective Date, payment by the Escrow Agent of any Notice and Administration Costs exceeding $200,000 shall require notice to, and agreement from, Defendants, through Defendants' Counsel. Subsequent to the Effective Date, without further approval by Defendants, any Released Parties or the Court, the Escrow Agent may pay from the Settlement Fund all reasonable and necessary Notice and Administration Costs in excess of any amount paid prior to the Effective Date. Defendants, Defendants' Counsel, and the Released Parties shall not have any responsibility for, nor any liability with respect to, any Notice and Administration Costs incurred or paid, and shall have no responsibility for, and no liability with respect to, any acts or omissions of the Claims Administrator, Lead Counsel, the Escrow Agent, or their respective agents, with regard to any Notice and Administration Costs.

13.    All Taxes shall be considered to be a cost of administration of the proposed settlement embodied in this Stipulation and shall be timely paid out of the Settlement Fund. The Claims Administrator shall be solely responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund, and the Escrow Agent is authorized to permit the

Claims Administrator to withdraw from the Settlement Fund, without prior order of the Court or approval of Defendants, such amounts as are necessary to pay Taxes.

14.     After (i) the Effective Date occurs and (ii) entry by the Court of a Class Distribution Order that has become Final, the Claims Administrator shall, subject to the supervision of Lead Counsel, distribute the Net Settlement Fund to Authorized Claimants in accordance with the terms of such Final Class Distribution Order; provided, however, that any amounts in the Escrow Account necessary for payment of Taxes, attorneys' fees and Litigation Expenses awarded by the Court and/or Notice and Administration Costs shall remain in the Escrow Account for such purpose. The Escrow Agent is authorized to permit the Claims Administrator to make the foregoing distributions.

15.     If all conditions of the Settlement are satisfied and the Effective Date has occurred, no portion of the Settlement Fund will be returned to Resource Capital, irrespective of the number of Claims filed, the collective amount of losses of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund. If any portion of the Net Settlement Fund remains following distribution pursuant to ¶26 and is of such an amount that in the determination of the Claims Administrator, in consultation with Lead Counsel, it is not cost-effective or efficient to redistribute such amount to the Class, then such remaining funds, after payment of any further Notice and Administration Costs and Taxes, shall be donated to a nonsectarian charitable organization(s) certified as tax-exempt under United States Internal Revenue Code Section 501(c)(3), as approved by the Court.

16.     The Settling Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended (the "Code") and Treasury Regulation § 1.468B-1. The Settling Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority inconsistent with such treatment. The Claims

Administrator shall make reasonable efforts to ensure that the Settlement Fund at all times complies with applicable provisions of the Code and Treasury regulations in order to maintain its treatment as a Qualified Settlement Fund. To this end, the Judgment shall provide that the Settlement Fund is approved by the Court as a Qualified Settlement Fund, and the Claims Administrator shall make reasonable efforts to ensure that the Escrow Agent complies with all applicable provisions of the Code and Treasury regulations in order to maintain the treatment of the Settlement Fund as a Qualified Settlement Fund. The Settling Parties agree that the Claims Administrator, as "administrator" of the Settlement Fund within the meaning of Treasury Regulation § l.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § l.468B-2(k)) for the Settlement Fund. Such returns shall be consistent with this paragraph and in all events shall reflect that all Taxes on the income earned on the Settlement Fund shall be paid out of the Settlement Fund as provided by ¶11 herein. Upon written request, Resource Capital will provide to the Claims Administrator the statement described in Treasury Regulation § l.468B-3(e). The claims Administrator, as "administrator" of the Settlement Fund within the meaning of Treasury Regulation § l.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation-back election," as described in Treasury Regulation § l.468B-l(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith. The taxable year of the Settlement Fund shall be the calendar year in accordance with Treasury Regulation § l.468B-2(j). The Settlement Fund shall use an accrual method of accounting within the meaning of Section 446(c) of the Code.

17.     All tax returns prepared by the Claims Administrator for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous ¶16 and in all events shall reflect that

all Taxes on the income and gains earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

18.     The Released Parties shall not have any responsibility for, and no liability with respect to, payment of any Taxes, and shall have no responsibility for, and no liability with respect to, the acts or omissions of the Claims Administrator, Lead Counsel, the Escrow Agent, or their agents, with regard to Taxes. Defendants and Defendants' Counsel shall notify the Escrow Agent promptly if they receive any notice of any claim for Taxes relating to the Settlement Fund, but shall otherwise have no responsibility for, or liability with respect to, the administration or distribution of the Settlement Fund or any related acts or omissions of the Claims Administrator, Lead Counsel, or the Escrow Agent. The Settling Parties agree to cooperate with each other, and their tax attorneys and accountants, to the extent reasonably necessary to carry out the terms of this Settlement with regard to Taxes.

## PLAN OF ALLOCATION

19.     Subject to entry by the Court of a Class Distribution Order that becomes Final, the Net Settlement Fund shall be distributed to Authorized Claimants in accordance with a Plan of Allocation, provided that such Plan of Allocation, after appropriate notice thereof to the Class, has been approved by the Court in an order that has become Final.

20.     The Defendants, the Released Parties, and Defendants' Counsel shall have no role in the preparation of the Plan of Allocation and shall take no position with respect thereto. Neither Defendants nor the Released Parties shall have any responsibility or liability whatsoever for the Plan of Allocation.

21.     The Plan of Allocation is a matter separate and apart from the proposed settlement between the Settling Parties as embodied in this Stipulation. The Plan of Allocation is not a necessary or material term of this Settlement and it is not a condition of this Settlement that any Plan of Allocation be approved by the Court or that any order approving a Plan of Allocation becomes Final. Any order by the Court or any appellate court with respect to a Plan of Allocation shall not preclude the Judgment from being deemed

Final nor shall it prevent the Effective Date from occurring. None of the Settling Parties may cancel or terminate the Settlement based on the Court's or any appellate court's ruling with respect to a Plan of Allocation.

## ATTORNEYS' FEES AND LITIGATION EXPENSES

22.     Lead Counsel may apply to the Court for an award from the Settlement Fund of attorneys' fees and Litigation Expenses and an incentive award payable to Plaintiffs. Attorneys' fees and Litigation Expenses and any incentive awards are not the subject of any agreement between the Settling Parties other than what is set forth in this Settlement.

23.     The Released Parties will take no position on Lead Counsel's request for attorneys' fees or Litigation Expenses or incentive awards, and shall have no responsibility for, and no liability with respect to, the attorneys' fees or Litigation Expenses or incentive awards that the Court may award.

24.     The procedure for and amounts of any award of attorneys' fees and Litigation Expenses and incentive awards, and the allowance or disallowance by the Court thereof, are not necessary or material terms of this Settlement and are not a condition of this Settlement. Lead Counsel shall request that its application for an award of attorneys' fees and Litigation Expenses and incentive awards be considered by the Court separately from (but not prior to) the Court's consideration of the fairness, reasonableness and adequacy of the proposed settlement embodied herein. Any order or proceedings relating to Lead Counsel's request for attorneys' fees or Litigation Expenses or incentive awards, or any appeal from any order relating thereto or reversal or modification thereof, shall not preclude the Judgment from being deemed Final nor shall it prevent the Effective Date from occurring. None of the Settling Parties may cancel or terminate the Settlement based on the Court's or any appellate court's ruling with respect to Lead Counsel's application for attorneys' fees and Litigation Expenses and incentive awards.

25.     Within three (3) business days after entry by the Court of the Fee and Expense Order, any amounts awarded in the order shall be paid to Lead Counsel from the Escrow Account by the Escrow

Agent, notwithstanding the existence of or pendency of any appeal or collateral attack on the Settlement or any part thereof or the Fee and Expense Order. In the event that the Effective Date does not occur or the Settlement is terminated pursuant to its terms, or if, as the result of any appeal or further proceedings on remand, or successful collateral attack, the Fee and Expense Order is reversed or modified pursuant to a Final court order and attorneys' fees and Litigation Expenses have been paid out of the Escrow Account to any extent, then Lead Counsel shall be obligated and do hereby agree, within ten (10) business days after receiving notice of the foregoing from Defendants' Counsel or from a court of appropriate jurisdiction, to refund to the Escrow Account such attorneys' fees and Litigation Expenses that have been paid, plus interest thereon at the same rate as would have been earned had those sums remained in the Escrow Account.

## ADMINISTRATION OF THE SETTLEMENT

26.      The Claims Administrator, subject to the supervision of Lead Counsel and the jurisdiction of the Court, shall administer and calculate the Claims submitted by Claimants, oversee distribution of the Net Settlement Fund to Authorized Claimants pursuant to a Plan of Allocation approved by the Court in an Order that has become Final and subject to a Class Distribution Order entered by the Court that has become Final, and perform all claims administration procedures necessary or appropriate in connection therewith.

27.      Other than Resource Capital's obligation to provide its shareholder lists, as provided herein, none of the Released Parties shall have any responsibility for, involvement in, or liability for providing the Settlement Notices to the Class, the administration of the Settlement or the Claims process, the reviewing or challenging of Claims of Claimants, the implementation of the Plan of Allocation as approved by the Court or the distribution of funds from the Net Settlement Fund. Defendants and Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

28.     Within ten (10) days following the entry of the Preliminary Approval Order, Resource Capital shall provide or cause to be provided to the Claims Administrator (at no cost to the Settlement Fund, Lead Counsel or the Claims Administrator) lists of record holders of Resource Capital Common Shares, Series B Preferred Shares, and Series C Preferred Shares during the Class Period, to the extent such lists are maintained by its stock transfer agent and reasonably available to Resource Capital upon request. The lists shall be provided in electronic form or such other form as is reasonably available to Resource Capital.

29.     The Claims Administrator shall mail the Notice to those Class Members who may be identified through the records maintained by or on behalf of Resource Capital, and shall publish the Summary Notice, pursuant to the terms of the Preliminary Approval Order.

30.     The Claims Administrator shall receive Claims and determine first, whether the Claim is a valid Claim, in whole or part, and second, each Authorized Claimant's share of the Net Settlement Fund based upon the Plan of Allocation approved by the Court. The Claims Administrator, subject to the supervision of Lead Counsel, shall have the right, but not the obligation, to waive what it deems to be formal or technical defects in any Claims submitted in the interests of achieving substantial justice.

31.     Neither Defendants nor any other Released Party shall be permitted to review, contest, or object to any Claim or any decision of the Claims Administrator or Lead Counsel with respect to accepting or rejecting any Claim for payment by a Class Member.

32.     Any Class Member who does not timely submit a valid Claim by the deadline set by the Court in the Preliminary Approval Order will not be entitled to receive any distribution from the Net Settlement Fund but will nevertheless be bound by all of the terms of this Settlement, including the terms of the Judgment to be entered in the Action and the releases provided for therein, and will be permanently

barred and enjoined from bringing any action, claim or other proceeding of any kind against any Released Party concerning any Released Claim.

33.     For purposes of determining the extent, if any, to which a Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

        a.     Each Class Member shall be required to submit a Proof of Claim Form, substantially in the form attached hereto as Exhibit A-2, supported by such documents as are designated therein, including proof of the Claimant's loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

        b.     All Proof of Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Settlement Notices, unless such deadline is extended by Order of the Court. Any Class Member who fails to submit a Proof of Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Settlement (unless, by Order of the Court, late-filed Claims are accepted), but shall in all other respects be bound by all of the terms of this Settlement, including the terms of the Judgment and the releases provided for therein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any Released Party concerning any Released Claim. A Proof of Claim Form shall be deemed to be submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions set forth on the Proof of Claim Form;

        c.     Each Proof of Claim Form shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine in accordance with this Settlement the extent, if any, to which each Claim shall be allowed, subject to review by the

Court pursuant to subparagraph (e) below;

      d.     Proof of Claim Forms that do not meet the submission requirements may be rejected. Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, by mail, first class postage pre-paid, to give the Claimant the chance to remedy any curable deficiencies in the Proof of Claim Form submitted within a period of twenty (20) days after such notice has been mailed. The Claims Administrator, under supervision of Lead Counsel, shall notify, in a timely fashion and in writing, by mail, first-class postage pre-paid, all Claimants whose Claim the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below within twenty (20) days following the mailing of such notice by the Claims Administrator;

      e.     If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within the timeframe stated in the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court; and

      f.     The administrative determinations of the Claims Administrator accepting and rejecting Claims shall be presented to the Court, on notice to Defendants' Counsel, for approval by the Court in the Class Distribution Order.

34.     By submitting a Claim, a Class Member shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claim, including, but not limited to, the releases provided for in the Judgment, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the Claimant's status as a Class Member and the validity and amount of their Claim. No discovery shall be allowed on the merits of this Action or this Settlement in connection with the processing of Proof of Claim Forms. Defendants shall have no right to take any such discovery nor any responsibility to provide such discovery.

35.     The Net Settlement Fund shall be distributed to Authorized Claimants by the Claims Administrator only after the later of the Effective Date having occurred; the Court having approved a Plan of Allocation in an order that has become Final; and the Court issuing a Class Distribution Order that has become Final.

36.     Lead Counsel will apply to the Court, with reasonable notice to the Defendants, for a Class Distribution Order, *inter alia:* (i) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (ii) approving payment of any outstanding Notice and Administration Costs from the Escrow Account (except to the extent that Court approval is not required as specified herein); and (iii) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account in specified increments until, in the determination of the Claims Administrator, in consultation with Lead Counsel, it is no longer economically feasible to distribute the remaining funds, at which time any such remaining funds, after payment of any further Notice and Administration Costs and Taxes, shall be donated to a nonsectarian charitable organization(s) certified as tax-exempt under United States Internal Revenue Code Section 501(c)(3), as approved by the Court; and (iv) such other relief as appropriate.

37. Payment pursuant to the Class Distribution Order shall be final and conclusive against any and all Class Members. All Class Members who did not submit a Claim or whose Claim was not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but shall be bound by all of the terms of this Settlement, including the terms of the Judgment and the releases provided for therein, and will be permanently barred and enjoined from bringing any action against any Released Party concerning any Released Claim.

38. All proceedings with respect to the administration, processing, and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.

**OBJECTIONS AND REQUESTS FOR EXCLUSION**

39. Pursuant to the terms and subject to the conditions set forth in the Preliminary Approval Order, any Class Member may appear at the Final Approval Hearing and show cause why the Stipulation, and the proposed settlement embodied herein, should or should not be approved as fair, reasonable and adequate and in the best interests of the Class, or why the Judgment should or should not be entered thereon, and/or to present opposition to the Plan of Allocation or to the application of Lead Counsel for attorneys' fees and reimbursement of Litigation Expenses.

40. Pursuant to the terms and subject to the conditions set forth in the Preliminary Approval Order, any putative Class Member may request to be excluded from the Class.

41. The Claims Administrator shall scan and electronically send copies of all requests for exclusion in .pdf format (or such other format as shall be agreed) to Defendants' Counsel and to Lead Counsel expeditiously (and not more than two (2) days) after the Claims Administrator receives such a request.

**PRELIMINARY APPROVAL OF THE SETTLEMENT**

42.     Promptly after execution of this Settlement, Plaintiffs, by and through Lead Counsel, with Defendants' consent, shall submit this Settlement together with the exhibits annexed hereto to the Court and shall move for entry of the Preliminary Approval Order, among other things, preliminarily approving the Stipulation and the Settlement embodied herein, approving the contents and method of distribution of the Notice and Summary Notice, approving the contents of the Proof of Claim Form, and setting a date for the Final Approval Hearing.

**JUDGMENT APPROVING THE SETTLEMENT**

43.     Plaintiffs, by and through Lead Counsel, with Defendants' consent, shall request that the Court, if it approves the Settlement embodied in this Stipulation following the Final Approval Hearing, enter the Judgment, substantially in the form annexed hereto as Exhibit B, pursuant to Rule 54 of the Federal Rules of Civil Procedure.

44.     The Judgment shall contain a bar order, substantially in the form set forth in Exhibit B (the "Bar Order"), that will, upon the Effective Date of the Settlement, permanently bar, extinguish, and discharge any and all claims, actions, suits, cause of action, or demands by any person against the Released Parties, whether for contribution or indemnification or however styled, where the alleged injury consists of or arises from Plaintiffs' liability to the Class or any Class Member for a claim arising out of or related to the allegations in the Action. The Bar Order shall further provide that:

      a.     Any final verdict or judgment that may be obtained by or on behalf of the Class or a Class Member against any person or entity subject to the Bar Order shall be reduced by the greater of: (a) an amount that corresponds to the percentage of responsibility of the Defendants for common damages; or (b) the amount paid on behalf of Defendants to the Class or Class Member for common damages.

b.      The Released Parties shall be barred from bringing any claim for contribution or indemnification arising out of or related to any Released Claim against any person, other than a person whose liability has been extinguished by the Settlement.

c.      Notwithstanding anything to the contrary herein, the Bar Order shall not apply to: (i) any claims the Defendants or any other Released Party may have against any insurance carrier for advancement of legal fees or indemnification, or (ii) any claims by a Defendant against any party whose liability to the Class or any Class Member for a Released Claim has been extinguished by the Settlement.

## TERMINATION RIGHTS

45.      Defendants and Plaintiffs each shall have the right to terminate the Settlement by providing written notice to the other of their election to do so within thirty (30) days of the date on which any of the following occur: (a) the Court declines to enter the Preliminary Approval Order in any material respect; (b) the Court refuses to approve this Settlement or any material term hereof; (c) the Court declines to enter the Judgment in any material respect; (d) the Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court; or (e) the Settlement Amount is not paid in accordance with the terms of ¶1. In addition, Defendants may terminate this Settlement in accordance with ¶46. Notwithstanding the foregoing, any decision by the Court or any appeals court with respect to an application for attorneys' fees or Litigation Expenses or with respect to a Plan of Allocation or a Class Distribution Order, shall not be considered material to this Settlement, shall not preclude the Judgment from being deemed Final and shall not be grounds for termination. In the event this Settlement is terminated, the provisions of ¶¶9, 10, 25, 27, 47, and 48 shall survive such termination. The termination rights set forth herein are not intended to limit or impair the Settling Parties' rights under the law of contracts of the State of New York with respect to any breach of this Settlement.

46.     Defendants shall have the option to terminate this Settlement in the event that the aggregate number of total shares of Resource Capital Common Shares, Series B Preferred Shares, and/or Series C Preferred Shares purchased during the Class Period by persons or entities who would otherwise be entitled to participate in the Settlement as Class Members, but who timely and validly request exclusion from the Class in accordance with the requirements set forth in the Notice, equals or exceeds any Opt-Out Threshold. The applicable Opt-Out Thresholds may be disclosed *in camera* to the Court for purposes of approval of the Settlement, as may be required by the Court, but such disclosure shall be carried out to the fullest extent possible in accordance with the practices of the Court so as to maintain the confidentiality of the Opt-Out Thresholds.

47.     Except as otherwise provided herein, in the event this Settlement is terminated, this Stipulation, and the Settlement embodied herein, shall be without prejudice, and none of its terms shall be effective or enforceable and the fact of the Settlement shall not be admissible in any trial of this Action, and the Settling Parties shall be deemed to have reverted to their respective status in this Action immediately prior to their agreement, in principle, to settle the Action on November 30, 2017, and will in good faith meet and confer as to a schedule for the completion of discovery and other pretrial proceedings and for the trial of this Action, and, except as otherwise expressly provided, the Settling Parties shall proceed in all respects as if this Settlement and any related orders had not been entered, and any portion of the Settlement Amount previously paid into the Escrow Account, including, but not limited to, any funds disbursed in payment of attorneys' fees and Litigation Expenses, plus interest thereon at the same rate as would have been earned had those funds remained in the Escrow Account, less any amounts for Taxes paid or owing with respect to interest income and/or gains on the Settlement Amount and /or for Notice and Administration Costs actually incurred and paid or payable, shall be returned by Lead Counsel

and/or the Escrow Agent to Defendants within fourteen (14) business days after written notification of such event by Defendants' Counsel to Lead Counsel.

## NO ADMISSION OF WRONGDOING

48.     Whether or not the Settlement, as embodied in this Stipulation, is approved by the Court, and whether or not this Settlement is consummated, the fact and terms of this Settlement, including the exhibits annexed hereto and the Supplemental Agreement, the Settlement embodied within it, all negotiations, discussions, drafts and proceedings in connection with this Settlement, and any act performed or document signed in connection therewith:

a.      shall not be offered or received against the Released Parties, Plaintiffs or the other Class Members as evidence of, or be deemed to be evidence of, any presumption, concession or admission by any of the Released Parties or by Plaintiffs or the other Class Members with respect to the truth of any fact alleged by Plaintiffs or the validity, or lack thereof, of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault or wrongdoing of the Released Parties;

b.      shall not be offered or received against the Released Parties as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Released Party, or against Plaintiffs or any of the other Class Members as evidence of any infirmity in the claims of Plaintiffs and the other Class Members;

c.      shall not be offered or received against the Released Parties, Plaintiffs or the other Class Members as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against

any of the foregoing parties, in any arbitration proceeding or other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Settlement; provided, however, that if the Settlement is approved by the Court, the Released Parties may refer to this Settlement to effectuate the protection from liability granted them hereunder;

      d.     shall not be construed against the Released Parties, Defendants' Counsel, Lead Counsel or Plaintiffs or the other Class Members as an admission or concession that the consideration to be paid hereunder represents the amount which could be or would have been recovered after trial; and

      e.     shall not be construed as or received in evidence as an admission, concession or presumption against Plaintiffs or the other Class Members or any of them that any of their claims are without merit or that damages recoverable under the Complaint would not have exceeded the Settlement Amount.

## MISCELLANEOUS PROVISIONS

49.     All of the exhibits attached hereto and the Supplemental Agreement referenced herein are hereby incorporated by reference as though fully set forth herein and are material terms of the Settlement. Notwithstanding the foregoing, in the event that there is a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of this Stipulation shall control.

50.     The Settling Parties intend this Settlement to be a final and complete resolution of all disputes asserted or that could be asserted by Plaintiffs or any other Class Members in the Action against the Released Parties with respect to all Released Claims. Except in the event of the termination of this Settlement, Plaintiffs and Defendants agree not to assert under Rule 11 of the Federal Rules of Civil Procedure or any similar law, rule or regulation, that the Action was brought or defended in bad faith or without a reasonable basis. The Settling Parties agree that the Settlement Amount and the other terms of

this Settlement were negotiated at arms' length and in good faith by the Settling Parties and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with their respective experienced legal counsel.

51.     This Settlement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Settling Parties or their successors-in-interest.

52.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

53.     The waiver by one Settling Party of any breach of this Settlement by any other Settling Party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement.

54.     This Settlement, the exhibits annexed hereto, and the Supplemental Agreement incorporated by reference herein, constitutes the entire agreement among the Settling Parties concerning the Settlement, and no representations, warranties or inducements have been made to any Settling Party concerning this Settlement other than the representations, warranties and covenants contained and memorialized in this Settlement.

55.     This Settlement may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tif image of the signature transmitted via e-mail. All executed counterparts and each of them shall be deemed to be one and the same instrument.

56.     Plaintiffs agrees that it will use its best efforts to obtain all necessary approvals of the Court required by this Settlement, and Defendants agree to provide such support as may be reasonably requested by Plaintiffs or Lead Counsel.

57.     Each signatory to this Settlement represents that he or she has authority to sign this Settlement and any Settlement-related documents on behalf of Plaintiffs or Defendants, as applicable, and

that such signatory has the authority to take appropriate action required or permitted to be taken pursuant to this Settlement to effectuate its terms.

58.     This Settlement shall be binding upon and shall inure to the benefit of the successors and assigns of the Settling Parties hereto, including all Released Parties and any corporation, partnership, or other entity into or with which any Settling Party hereto may merge, consolidate or reorganize.

59.     The administration, consummation and enforcement of the Settlement as embodied in this Stipulation shall be under the authority of the Court and the Settling Parties intend that the Court retain jurisdiction for the purpose of, *inter alia,* entering orders providing for the award of attorneys' fees and Litigation Expenses, the approval of the Plan of Allocation and the Class Distribution Order and enforcing the terms of this Settlement.

60.     The construction, interpretation, operation, effect and validity of this Settlement, and all documents necessary to effectuate it, shall be governed by the laws of the state of New York, without regard to choice-of-law principles, except to the extent that federal law requires that federal law govern.

61.     To the extent there are disputes regarding the interpretation of any term of this Settlement, the Settling Parties will attempt to resolve any such dispute in good faith. If the Settling Parties fail to resolve the dispute, or in the event of a breach of the terms of the Settlement, any  Settling Party shall be entitled to bring an action seeking to enforce those provisions, and the exclusive forum for any such action shall be this Court.

62.     This Settlement shall not be construed more strictly against one Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arms' length negotiations among the Settling Parties and all Settling Parties have contributed substantially and materially to the preparation of this Settlement.

63.     No opinion or advice concerning the tax consequences of the Settlement to individual Class Members or any of the Settling Parties or any of the Released Parties is being given or will be given by Lead Counsel and/or Defendants' Counsel; nor is any representation or warranty in this regard made by virtue of this Settlement. Class Members will be directed to consult their own tax advisors regarding the tax consequences of the Stipulation, and the Settlement embodied herein, and any tax reporting obligations they might have with respect to it. Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

64.     All time periods set forth in this Settlement shall be computed in calendar days, unless expressly provided otherwise, and pursuant to the terms of Rule 6(a) of the Federal Rules of Civil Procedure.

65.     Except to the extent explicitly set forth otherwise in this Settlement, if any Settling Party is required to give notice to any other Settling Party under this Settlement, such notice shall be in writing and shall be deemed to have been duly given upon (a) receipt of hand delivery; (b) mailing by means of pre-paid, overnight courier delivery service or (c) sending of electronic mail, provided that no rejection notice occurs and that identical notice is sent by United States Mail, first-class postage pre-paid or pre-paid, overnight courier delivery service. Notice shall be provided as follows:

| | |
|---|---|
| If to Plaintiffs or Lead Counsel: | LEVI & KORSNSKY LLP<br>30 Broad Street, 24th Floor<br>New York, NY 10004<br>Attn: Nicholas I. Porritt<br>nporritt@zlk.com |
| If to Defendants or Defendants' Counsel: | Covington & Burling LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018<br>Attn: Mark P. Gimbel<br>mgimbel@cov.com |

IN WITNESS WHEREOF, the Settling Parties hereto have caused this Settlement to be executed, by their duly authorized attorneys as of the date first written above.

LEVI & KORSINSKY LLP

Nicholas I. Porritt
1101 30th Street, NW
Washington, DC 20007
(202) 524-4290

*Attorneys for Lead Plaintiff Douglas Drees and Plaintiff Allen Altman, and Class Counsel for All Others Similarly Situated*

COVINGTON & BURLING LLP

Mark P. Gimbel
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1000

*Attorneys for Defendants Resource Capital Corp., Jonathan Z. Cohen, David J. Bryant, Eldron C. Blackwell, and David E. Bloom*