# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAREN LEVIN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>RESOURCE CAPITAL CORP., JONATHAN Z. COHEN, DAVID J. BRYANT, ELDRON C. BLACKWELL, and DAVID E. BLOOM,<br><br>    Defendants. | Case No. 1:15-cv-07081<br><br>Hon. Louis L. Stanton |

**PLAINTIFFS' BRIEF IN SUPPORT OF UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF SETTLEMENT, (II) APPROVAL OF NOTICE TO THE CLASS, AND (III) SETTLEMENT HEARING**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................1

II.  SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS .................2

    A.   Plaintiffs' Claims and Allegations ...............................................................2

    B.   Procedural History and Lead Counsel's Investigation.............................3

    C.   Settlement Negotiations .............................................................................6

III. THE PROPOSED TERMS OF SETTLEMENT.............................................................6

    A.   The Class Definition .......................................................................6

    B.   Monetary Consideration and Plan of Allocation .....................................6

    C.   Release Provisions .......................................................................7

    D.   Attorneys' Fees and Reimbursement of Expenses.....................................8

    E.   The Court's Continuing Jurisdiction............................................................9

IV.  PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS
    APPROPRIATE .................................................................................................9

    A.   The Settlement Approval Process................................................................9

    B.   The Proposed Settlement Meets the Requirements for Preliminary
        Approval .................................................................................................10

        1.   The Complexity, Expense and Duration of the Litigation...........11

        2.   The Reaction of the Class ..............................................................11

        3.   The Extent of Discovery Completed and the Stage of the
            Proceedings .................................................................................11

        4.   The Risks of Establishing Liability and Damages......................12

        5.   The Ability of the Defendants to Withstand a Greater Judgment,
            and the Reasonableness of the Settlement in Light of the Best
            Possible Recovery .....................................................................13

V.   THE PROPOSED NATURE AND METHOD OF CLASS NOTICE ARE
    CONSTITUTIONALLY SOUND AND APPROPRIATE.........................................13

VI.  PROPOSED SCHEDULE.....................................................................................14

VII. CONCLUSION ...................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Dornberger v. Metropolitan Life Ins. Co.*,
   203 F.R.D. 118 (S.D.N.Y. 2001) ................................................................................ 14

*In re Giant Interactive Group, Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ................................................................................ 13

*Hadel v. Gaucho, LLC*,
   2016 WL 1060324 (S.D.N.Y. Mar. 14, 2016) ............................................................ 10

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................................... 10

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001) ....................................................................................... 12

*In re Nasdaq Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) .................................................................................... 9

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   2012 WL 5989763 (E.D.N.Y Oct. 24, 2012) ............................................................. 10

*Riedel v. Acqua Ancien Bath New York LLC*,
   2016 WL 3144375 (S.D.N.Y May 19, 2016) .............................................................. 11

**Other Authorities**

2 H. Newberg & A. Conte, Newberg on Class Actions § 11.41 at 11-85 (3d ed. 1992) .............. 10

Manual for Complex Litigation, Third § 30.41 (West 1995) ......................................................... 9

*Manual for Complex Litigation*, Third, § 23.14 (West ed. 1995) .......................................... 13, 14

## I.     INTRODUCTION

Plaintiffs Douglas Drees and Allen Altman ("Plaintiffs") respectfully submit this memorandum in support of their unopposed motion for an order preliminarily approving the proposed settlement ("Settlement") of this action embodied in the Stipulation and Agreement of Settlement filed contemporaneously herewith as ECF No. 78 (the "Stipulation").[1] The proposed Settlement was reached after the parties engaged in discovery, conducted depositions, fought over class certification, and participated in arm's length settlement negotiations before Robert A. Meyer, Esq., a well-known and well-respected mediator affiliated with JAMS. Based on a thorough understanding of the facts and the law, the parties agreed to the proposed Settlement which consists of $9,500,000 in cash. If approved, the Settlement will fully resolve this action, initially filed in September 2015, on behalf of a class of persons and entities who purchased Common Shares, Series B Preferred Shares, or Series C Preferred Shares of Resource Capital Corp. ("Resource Capital" or the "Company") between October 31, 2012 and August 5, 2015 (the "Class").

In determining whether preliminary approval is warranted, the sole issue before the Court is whether the proposed Settlement is within the range of what might be found to be fair, reasonable, and adequate so that notice of the proposed Settlement can be given to the Class and a hearing scheduled to consider final settlement approval. The Settlement clearly meets these criteria. As discussed below, while Plaintiffs believe their claims are meritorious, issues exist with respect to liability and damages, and therefore the $9,500,000 Net Settlement Fund that will be created under the parties' agreement represents a beneficial resolution of this litigation, and the Settlement is in the best interests of the Class.

---

[1]     Unless otherwise stated, capitalized terms have the same meaning as in the Stipulation.

Because all the requirements for preliminary approval of the Settlement are met, the Court should approve the form and manner of notice of the proposed Settlement to Class Members. Also, the Court should schedule a settlement hearing to determine whether the proposed Settlement, the Plan of Allocation, Lead Counsel's request for attorneys' fees and reimbursement of expenses, and Plaintiffs' requests for incentive awards should be finally approved as fair, reasonable and adequate.

## II.    SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS

### A.    Plaintiffs' Claims and Allegations

Plaintiffs bring this action (the "Action") on behalf of all persons who purchased Resource Capital Common Shares, Series B Preferred Shares, or Series C Preferred Shares between October 31, 2012 and August 5, 2015. Plaintiffs' Second Amended Class Action Complaint ("Second Amended Complaint"), filed on June 1, 2017, alleges that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). ECF No. 55. The Second Amended Complaint alleges that Defendants violated these statutes by disseminating materially untrue statements and omissions about Resource Capital's business by failing to alert investors about certain aspects of a particularly risky and dangerous loan within Resource Capital's portfolio (specifically, the Mezzanine Loan).

The Second Amended Complaint (the operative pleading in the Action) alleges that Defendants made false and/or misleading statements or omissions by failing to accurately and truthfully disclose that Resource Capital's position in the Mezzanine Loan was, in part, secured by collateral located in Puerto Rico and that the Mezzanine Loan was not performing in accordance with its original terms. Resource Capital ultimately reserved approximately $38.1 million for the Mezzanine Loan's outstanding principal and interest balance in or around August 2015. Plaintiffs

2

further allege that as a result of Defendants' alleged misrepresentations and/or omissions, the trading price of Resource Capital's securities was artificially inflated during the Class Period, and therefore securities holders who purchased during the Class Period were damaged when the truth was revealed and the stock price declined.

The Second Amended Complaint alleges that the inflation of Resource Capital's stock prices and subsequent drop resulted in damages to the Class. The lawsuit seeks money damages against Defendants for alleged violations of the federal securities laws.

Defendants deny each and all of the claims and contentions of wrongdoing alleged by Plaintiffs in the Action and maintain that they have at all times acted in good faith and in compliance with the law. They contend that they did not make any materially false or misleading statements, that they disclosed all material information required to be disclosed, and that any alleged misstatements or omissions were not made with the requisite intent or knowledge of wrongdoing. Defendants also contend that any losses suffered by members of the Class were not caused by any false or misleading statements or any other act or omission by Defendants and/or were caused by other events.  Defendants have agreed to settle this action, without admitting any wrongdoing, solely to avoid the expense, distraction, and uncertainty of further litigation.

**B.      Procedural History and Lead Counsel's Investigation**

On September 9, 2015, a class action complaint, styled *Levin v. Resource Capital Corp., et al.*, 1:15-cv-07081 (S.D.N.Y.), was filed against Defendants asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5.  On November 24, 2015, the District Court appointed Douglas Drees to serve as Lead Plaintiff and Levi & Korsinsky, LLP as Lead Counsel for the putative class. On February 12, 2016, Plaintiffs filed the Amended Complaint.

3

Prior to filing the initial complaint and subsequent Amended Complaint, Levi & Korsinsky, LLP conducted a thorough investigation. The investigation included reviewing Resource Capital's filings with the SEC and public statements in press releases and conference calls. The investigation also included reviewing material about the company, such as analyst reports and information readily available on the internet. Finally, the investigation also included obtaining and reviewing internal correspondence by and between Defendants and former officers of Resource Capital in addition to interviewing former employees of the company. The information obtained during the course of the investigation was extensive.

On April 12, 2016, following a good faith attempt to meet and confer in accordance with this Court's practice rules, Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF No. 26. Lead Plaintiff filed his opposition to the motion to dismiss on June 13, 2016. ECF No. 30. Defendants filed a brief in reply and further support of the motion to dismiss on July 28, 2016. ECF No. 33. The District Court denied the motion to dismiss on October 5, 2016. ECF No. 36.

The parties proceeded to discovery following the denial of Defendants' motion to dismiss. Initial deadlines in the case included deadlines to exchange initial disclosures under Federal Rule of Civil Procedure 26. The parties served requests for production upon each other. Plaintiffs produced a significant amount of document discovery, including account statements and trade confirmations relating to their purchases and sales of Resource Capital stock, and Defendants also produced a substantial volume of document discovery.

On April 10, 2017, the Parties participated in a mediation session held before mediator Robert A. Meyer, Esq. of JAMS, but were unsuccessful in coming to an agreement. The parties submitted extensive mediation briefs in advance of the mediation. The parties continued to engage

4

in discovery following the mediation. Discovery included document productions from Resource Capital and several non-parties, including Moody's, Fitch Ratings, BlackRock, Grant Thornton LLP. In total, these parties produced over 170,000 pages of discovery.

On June 1, 2017, Lead Plaintiff filed the Second Amended Complaint naming Allen Altman, Individually and as Trustee of the Allen Altman & Catherine Altman Living Trust, as an additional plaintiff and expanding the "Class" to include, in addition to common stockholders, persons and entities who purchased Resource Capital Series B and Series C Preferred Shares between October 31, 2012 and August 5, 2015. The Second Amended Complaint's substantive allegations were identical to the substantive allegations in the Amended Complaint. ECF No. 55. On June 2, 2017, Plaintiffs moved for class certification in the Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel (the "Class Certification Motion"). ECF No. 56. On August 18, 2017, Defendants filed a brief in opposition to Lead Plaintiff's Class Certification Motion. ECF Nos. 69-70.

On August 30, 2017, Plaintiffs served a Second Request for the Production of Documents. Defendants served their responses and objections to this request on September 6, 2017 and produced additional documents thereafter.

The District Court granted Plaintiffs' Class Certification Motion on November 22, 2017, appointing Douglas Drees and Allen Altman as Class Representatives of a class consisting of all persons who purchased or otherwise acquired Resource Capital's Common Shares, Series B Preferred Shares, and Series C Preferred Shares during the Class Period.  ECF No. 77.

After extensive discovery, including extensive document review, depositions of Plaintiffs, and Plaintiffs' expert Steven Feinstein, Ph.D., and Plaintiffs' deposition of Defendants' expert Daniel Garrett, the Parties returned to settlement talks with the mediator.

## C.    Settlement Negotiations

On November 28, 2017, following several conversations between the Settling Parties and Mr. Meyer, Mr. Meyer issued a "mediator's proposal" in an attempt to resolve the matter. The Settling Parties accepted the proposal in principle, subject to certain conditions, including but not limited to the negotiation of a mutually satisfactory long-form settlement agreement. The Parties entered into the Stipulation on February 5, 2018.

## III.    THE PROPOSED TERMS OF SETTLEMENT

## A.    The Class Definition

The Class means all Persons who purchased or otherwise acquired Common Shares, Series B Preferred Shares, or Series C Preferred Shares of Resource Capital during the period October 31, 2012 and August 5, 2015.[2]

## B.    Monetary Consideration and Plan of Allocation

Under the terms of the proposed Settlement, Defendants agreed to a cash payment of nine million five hundred thousand U.S. dollars ($9,500,000) to be made to the Settlement Fund (as defined in ¶ 1.ww of the Stipulation) on behalf of Defendants. The $9,500,000 in cash will be deposited into the Settlement Fund within twenty (20) calendar days after the Court executes an order granting preliminary approval of the Settlement and after the provision of wire transfer and

---

[2] Excluded from the Class are Defendants; members of the Defendants' immediate families: (1) Defendants and members of the immediate family of any Defendant; (2) any entity in which any Defendant has, or had during the Class Period, a controlling interest; (3) the officers and directors of Resource Capital during the Class Period; and (4) the legal representatives, agents, executors, heirs, successors, or assigns of any of the foregoing excluded persons or entities who assert an interest in Resource Capital Common Shares, Series B Preferred Shares, and Series C Preferred Shares through or on behalf of any such excluded persons or entities. Also excluded from the Class are any putative Class Members who exclude themselves by filing a timely and valid request for exclusion in accordance with the requirements set forth in the Notice.

payment information. *See* Stipulation, ECF No. 78, at ¶ 2. Any interest earned will be for the benefit of the Class. *See id.* at ¶ 9.

Lead Counsel has considered the issues of liability and damages in determining an appropriate proposed Plan of Allocation. Lead Counsel did not favor or consider the particular trading history of the Plaintiffs or any other individual Class Member in crafting this plan. A copy of the Plan of Allocation is set forth in the Notice of Pendency and Proposed Settlement of Class Action, at Exhibit A-1 to the Stipulation. *See* Stipulation, ECF No. 78, at Ex. A-1.

## C.    <u>Release Provisions</u>

As more fully set forth in the Stipulation, upon the Effective Date, as defined in ¶ 1.r of the Stipulation, Plaintiffs, and each and every Class Member shall be deemed to have, and by operation of the Judgment shall have, released, waived, discharged and dismissed each and every of the Released Claims against the Released Parties. Released Claims means any and all claims, debts, demands, rights or causes of action or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, penalties, expenses or liability whatsoever, whenever or wherever incurred), whether based on federal, state, local, foreign, statutory, or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class, individual, or otherwise in nature, whether personal or subrogated, whether suspected or unsuspected, including both known claims and Unknown Claims: (1) that have been asserted in this Action against any of the Released Parties, or (2) that have been or could have been asserted in this Action or any forum by either Plaintiff or any Class Member (or any person or and/or entity claiming by, through, or on behalf of any Plaintiff or Class Member) against any of the Released Parties which in any way, directly or indirectly, arise out of or are

related to (i) the Mezzanine Loan or any statement or omission related to the Mezzanine Loan by any Released Party, (ii) any of the factual allegations of the Complaints, (iii) any misrepresentation or omission or alleged misrepresentation or omission by any Released Party before or during the Class Period in connection with Resource Capital or any of its subsidiaries or the purchase or sale of Common Shares, Series B Preferred Shares or Series C Preferred Shares or any other security issued by Resource Capital, or (iv) any loss sustained or allegedly sustained as a result of the purchase, sale, or holding of Common Shares, Series B Preferred Shares, or Series C Preferred Shares, or other security issued by Resource Capital during the Class Period. Notwithstanding the foregoing, "Released Claims" does not include (i) claims relating to the enforcement of the Settlement or its terms, or (ii) claims asserted derivatively on behalf of Resource Capital, including (without limitation) any of the derivative claims pending in *In re Resource Capital Corp. Shareholder Derivative* Litigation Demand Futile Actions, No. 1:17-cv-00253-LLS (S.D.N.Y.), *In re Resource Capital Corp. Shareholder Derivative Litigation Demand Refused Actions*, No. 1:17-cv-01381-LLS (S.D.N.Y.), or any other pending shareholder derivative action relating to the Mezzanine Loan. *See* Stipulation ¶¶ 1.cc.  The Released Claims do not include the right to enforce the Stipulation.

### D.    Attorneys' Fees and Reimbursement of Expenses

18.    Lead Counsel will apply to the Court for an award of attorneys' fees (which Plaintiffs state will not exceed one-third of the total Settlement Fund). *See* Stipulation, ECF No. 78, at Ex. A-1. Lead Counsel will also apply to the Court for a reimbursement of its reasonable expenses incurred through the litigation. *See id.* Lead Counsel will also seek incentive awards for Plaintiffs Douglas Drees and Allen Altman for $10,000 and $5,000, respectively. Plaintiffs participated in the action by discussing strategic aspects of the case as well as engaging in paper

8

discovery. *Id.* The Released Parties will take no position on Lead Counsel's request for attorneys' fees or Litigation Expenses or incentive awards, and shall have no responsibility for, and no liability with respect to, the attorneys' fees or Litigation Expenses or incentive awards that the Court may award. Stipulation, ECF No. 78, at ¶ 24.

**E.      The Court's Continuing Jurisdiction**

If the Court grants final approval of the proposed Settlement, the parties will request that the Court enter a final judgment of dismissal. The Court will retain jurisdiction with respect to the implementation and enforcement of the terms of the Settlement, and all parties agree to submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement. *See* Stipulation. ECF No. 78, at ¶ 60.

**IV.     PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE**

**A.      The Settlement Approval Process**

"Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled." *In re Nasdaq Market-Makers Antitrust Litig*., 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citing Manual for Complex Litigation, Third § 30.41 (West 1995)). At the preliminary approval stage, the Court "make[s] a preliminary evaluation of the fairness of the settlement, prior to notice." *Id*. The Settlement should be granted if it "[1] appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class and [4] falls within the range of possible approval[.]" *Id*. The Settlement Agreement fulfills the requirements for preliminary approval.

"The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re GMC Pick-Up*

*Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("*GM Trucks*") (citing, *inter alia*, 2 H. Newberg & A. Conte, Newberg on Class Actions § 11.41 at 11-85 (3d ed. 1992) (and cases cited therein)). "Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing." *Hadel v. Gaucho, LLC*, 2016 WL 1060324, at \*2 (S.D.N.Y. Mar. 14, 2016) (*citing GM Trucks*, 55 F.3d at 790-92).

**B.    The Proposed Settlement Meets the Requirements for Preliminary Approval**

The "threshold for preliminary approval of a proposed class action settlement is meaningfully lower than the threshold for final approval. Preliminary approval is appropriate where the proposal appears to be the product of serious negotiation and further appears to be within the range of possible final approval." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2012 WL 5989763, at \*1 (E.D.N.Y Oct. 24, 2012). Ultimately, in making a final determination of whether the proposed Settlement is fair, adequate, and reasonable, the Court will balance some or all of the following factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*McReynolds v. Richards–Cantave*, 588 F.3d 790, 804 (2d Cir. 2009). Consideration of these factors shows that the proposed Settlement now before the Court falls squarely within the range of

reasonableness warranting notice of the proposed Settlement to Class Members and scheduling a Settlement Hearing.

### 1.   The Complexity, Expense and Duration of the Litigation

Plaintiffs believe that the case has merit and that there will be evidence to establish Defendants' liability. Nevertheless, Plaintiffs recognize that Defendants have denied the material allegations in the Second Amended Complaint and that they strongly dispute the central premise of the Second Amended Complaint that Resource Capital's made misleading statements and/or omissions regarding the Mezzanine Loan that artificially inflated the price of the Resource Capital's stock during the Class Period. In view of these factors, without a settlement, Plaintiffs and the Class face a very real risk in this case that they could recover far less than the Settlement amount—or even nothing—without the Settlement. In addition, costly expert testimony concerning the materiality of Defendants' misstatements and loss causation would be crucial to Plaintiffs' case. In all events, protracted and highly complex further litigation without a reasonably predictable outcome would ensue if this case were not resolved at this time.

### 2.   The Reaction of the Class

As the Class has not yet received notice of the Settlement, its reaction cannot be known at this time.

### 3.   The Extent of Discovery Completed and the Stage of the Proceedings

The parties reached the proposed Settlement after substantial discussion, including formal mediation before Robert A. Meyer, Esq. of JAMS. Plaintiffs conducted months of investigation, including reviewing over 170,000 pages of documents produced from Resource Capital and several non-parties, including Moody's, Fitch Ratings, BlackRock, and Grant Thornton LLP. *See Riedel v. Acqua Ancien Bath New York LLC*, 2016 WL 3144375, at \*7 (S.D.N.Y May 19, 2016) (document exchange reflects ability of counsel to evaluate strengths and weaknesses of claims).

11

Discovery also included depositions of both Douglas Drees and Allen Altman and Plaintiffs' and Defendants' class certification experts. The Class was certified before settlement negotiations had resumed. Thus, Lead Counsel conducted a thorough examination regarding the impact of Defendants' alleged conduct on Class Members' alleged damages and was able to act intelligently in negotiating the proposed Settlement.

### 4. The Risks of Establishing Liability and Damages

In order to establish a violation of § 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder, the plaintiff must plead and prove "that the defendant made a false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused plaintiff injury." *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001) (internal quotation omitted). "The requisite state of mind, or scienter, in an action under section 10(b) and Rule 10b-5, which the plaintiff must allege [and prove] is an intent to deceive, manipulate or defraud." *Id.* (internal quotations omitted). Accordingly, Plaintiffs would be required to prove at trial not only that Defendants' statements were materially misleading, and that they resulted in the artificial inflation of Resource Capital's stock price, but also that Defendants made these statements with "an intent to deceive, manipulate or defraud." This would have been difficult, particularly in light of the subjective issues pertaining to loan impairment under generally accepted accounting principles. Given the difficulty in proving Defendants' mental state, establishing liability entails significant risk.

As discussed above, a Settlement Fund of $9,500,000 in cash will be created under the terms of the proposed Settlement. Given the issues Plaintiffs face regarding establishing liability, loss causation, and damages, there is a substantial risk that nothing would be recovered if this case were to proceed to trial. Thus, the $9,500,000 in cash is reasonable under the circumstances.

12

5. **The Ability of the Defendants to Withstand a Greater Judgment, and the Reasonableness of the Settlement in Light of the Best Possible Recovery**

"A defendant is not required to 'empty its coffers' before a settlement can be found adequate." *In re Giant Interactive Group, Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011) (quotation omitted). If the other *Grinnell* factors are met, a settlement is not unfair merely because the defendants could possibly afford more. *Id*.

The Settlement represents a recovery of $9,500,000. If the Court does not approve the Settlement, the Parties would litigate the calculation of damages, in addition to the merits. Regardless of how the Court would assess damages (if liability was established), the Settlement constitutes a substantial recovery for the Class.

For the reasons summarized above, Lead Counsel believes, based on their experience, knowledge of the strengths and weaknesses of the case, and all other factors considered in evaluating proposed class action settlements, that the proposed Settlement is fair, reasonable, and adequate and in the best interests of the Class Members.

## V. THE PROPOSED NATURE AND METHOD OF CLASS NOTICE ARE CONSTITUTIONALLY SOUND AND APPROPRIATE

Preliminary approval of the proposed Settlement permits notice to be given to the Class Members of a hearing on final settlement approval, at which they and the settling parties may be heard with respect to final approval. *See Manual for Complex Litigation*, Third, § 23.14 (West ed. 1995). Here, the parties propose that notice be given by U.S. mail. *See* Stipulation, ECF No. 78, at ¶ 30. In addition, the Stipulation provides for publication of a summary notice, which will be published shall be posted to a website to be maintained by the Claims Administrator and in the national edition of a business newswire. *See* Proposed Preliminary Approval Order, Exhibit A to the Stipulation.

13

The proposed form of mailed notice (Exhibit A-1 to the Stipulation), provides the following details of the Stipulation to prospective Class in a fair, concise and neutral way: (1) the existence of and their rights with respect to the class action, including the requirement for timely opting out of the Class; and (2) the Settlement with Defendants and their rights with respect to the Settlement. The proposed form of summary notice (Exhibit A-3 to the Stipulation) provides essential information about the litigation and the Settlement, including an address for potential class members to write in order to obtain the full long form of notice.

The means and forms of notice proposed here constitute valid and sufficient notice to the Class, the best notice practicable under the circumstances, and comply fully with the requirements of the Private Securities Litigation Reform Act of 1995, Rule 23 and due process. *See e.g.*, *Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118, 149 (S.D.N.Y. 2001) (notice sufficient where it "was reasonably calculated . . . to apprise Class Members of (i) the pendency of this action, (ii) their right to exclude themselves from the Class and the proposed settlement, (iii) their right to object to any aspect of the proposed settlement . . . (iv) their right to appear at the Fairness Hearing . . . , and (v) the binding effect of the Orders and Judgment in this action"); *see also Manual Third* § 30.41 (approving use of combined class notice and settlement notice where appropriate).

## VI.    PROPOSED SCHEDULE

Plaintiffs respectfully request the Court to schedule the dates required by, and set forth in the [Proposed] Order Granting Preliminary Approval of Settlement and Directing Dissemination of Notice to the Class, which Lead Counsel will present to the Court at the hearing to be scheduled by the Court. Specifically, Plaintiffs requests the Court schedule the following dates:

| Last day to complete mailing of Notice and Proof of Claim Form and to publish Summary Notice. | 110 days after entry of preliminary approval order |
|---|---|

14

| | |
|---|---|
| Last day for filing and serving papers in support of final approval of the proposed Settlement, and the applications for Fee and Expense Awards.<br><br>(The deadline shall be no less than 35 days prior to the Settlement Hearing.) | 35 days prior to settlement hearing |
| Last day for Class Members to submit comments in support of, or in opposition to, the proposed Settlement, and the applications for Fee and Expense Awards. (The deadline shall be no less than 21 days prior to the Settlement Hearing.) | 21 days prior to settlement hearing |
| Last day for potential Class Members to request exclusion from the Class.<br><br>(The deadline shall be no less than 21 days prior to the Settlement Hearing.) | 21 days prior to settlement hearing |
| Last day for filing and serving papers in response to objections to the proposed Settlement, and the applications for Fee and Expense Awards.<br><br>(The deadlines shall be no less than 7 days prior to the Settlement Hearing.) | 7 days prior to settlement hearing |
| Settlement Hearing | [at least 120 days after entry of preliminary approval order] |

## VII.    CONCLUSION

The proposed Settlement is presumptively fair and presents no obvious deficiencies. Accordingly, the Court should grant preliminary approval of the proposed Settlement and enter an order substantially in the form of the accompanying [Proposed] Order Granting Preliminary Approval of Settlement and Directing Dissemination of Notice to Class.

Dated:  February 5, 2018                    Respectfully submitted,


                                       LEVI & KORSINSKY, LLP

                                       /s/ Adam M. Apton
                                       Nicholas I. Porritt
                                       Adam M. Apton


15

30 Broad Street, 24th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171

*Attorneys for Plaintiffs Douglas Drees and Allen Altman and Lead Counsel for the Class*