# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAREN LEVIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>RESOURCE CAPITAL CORP., JONATHAN Z. COHEN, DAVID J. BRYANT, ELDRON C. BLACKWELL, and DAVID E. BLOOM,<br><br>Defendants. | Docket No.: 1:15-cv-07081-LLS<br><br>Hon. Louis L. Stanton<br><br>Date: August 3, 2018<br>Time: 12:00 p.m.<br>Courtroom: 21C |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS

Nicholas I. Porritt
Adam M. Apton
LEVI & KORSINSKY, LLP
1101 30th Street NW, Suite 115
Washington, DC 20007
Telephone:  202-524-4290
Facsimile:   202-333-2121

*Attorneys for Plaintiffs Douglas Drees and Allen Altman and Lead Counsel for the Class*

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ............................................................................................1

II.    ARGUMENT ..................................................................................................2

        A.    The Proposed Settlement Warrants Final Approval. .................................2

               1.    The Settlement was Reached after Arm's Length Negotiations with the Assistance of an Experienced Mediator. .........................3

               2.    The Application of the Grinnell Factors Supports Approval of the Settlement as Fair, Reasonable, and Adequate .............................4

        B.    The Plan of Allocation is Fair, Reasonable, and Adequate. ...................13

        C.    Notice to the Class Satisfies the Requirements of Rule 23, Due Process, and the PSLRA ...................................................................................15

III.   CONCLUSION ............................................................................................16

## TABLE OF AUTHORITIES

**Cases**

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................................. 10

*In re AOL Time Warner, Inc. Sec. and ERISA Litig.*,
    No. 02 Civ 5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)............................ 4, 7

*Arace v. Thompson*,
    No. 08 Civ 7905, 2011 WL 3627716 (S.D.N.Y. Aug. 17, 2011) ......................... 15

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) ............................................................ 7

*In re Bank of Am. Corp. Sec., Derivative and ERISA Litig.*,
    772 F.3d 125 (2d Cir. 2014) ................................................................................ 15

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
    No. 07 Civ. 2207, 2010 WL 3119374 (S.D.N.Y. Aug. 6,  2010) ......................... 7

*In re Bisys Sec. Litig.*,
    No. 04 Civ 3840 (JSR), 2007 WL 2049726 (S.D.N.Y. July 16, 2007) ................. 6

*In re Chambers Dev. Sec. Litig.*,
    912 F. Supp. 822 (W.D. Pa. 1995)....................................................................... 12

*Chavarria v. N.Y. Airport Serv., LLC*,
    875 F. Supp. 2d 164, 171 (E.D.N.Y. 2012) ............................................ 2, 12, 14

*In re China Sunergy Sec. Litig.*, No. 07-CV-7895,
    2011  WL  1899715 (S.D.N.Y. May 13, 2011) ..................................................... 3

*In re Citigroup Inc. Bond Litig.*,
    296 F.R.D. 147 (S.D.N.Y. 2013) ........................................................................... 6

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ............................................................................ 2, 3, 4

*In re Datatec Sys., Inc. Sec. Litig.*,
    No. 04-CV-525, 2007 WL 4225828 (D.N.J. Nov. 28, 2007) .............................. 14

*Davis v. J.P. Morgan Chase & Co.*,
    827 F. Supp. 2d 172 (W.D.N.Y. 2011)................................................................... 7

*Flores v. Anjost Corp.*,
    No. 11 Civ. 1531, 2014 WL 321831 (S.D.N.Y. Jan. 29, 2014)............................. 2

*In re Gen. Instrument Sec. Litig.*,
    209 F. Supp. 2d 423 (E.D. Pa. 2001) .................................................................. 14

*In re Giant Interactive Group, Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) .................................................................... 4, 10

*In re Gilat Satellite Networks, Ltd.*,
 No. CV-02-1510, 2007 WL 1191048 (E.D.N.Y.  Apr. 19, 2007) ............................................ 5

*In re Global Crossing Sec. and ERISA Litig.*,
 225 F.R.D. 436, (S.D.N.Y. 2004) .............................................................................. 10, 14

*Goldberger v. Integrated Res., Inc.*,
 209 F.3d 43 (2d Cir. 2000) ........................................................................................... 3

*In re IMAX Sec. Litig.*,
 283 F.R.D. 178 (S.D.N.Y. 2012) ................................................................................... 5

*Khait  v.  Whirlpool  Corp.*,
 No.  06-6381,  2010  WL  2025106 (E.D.N.Y. Jan. 20, 2010)..................................... 3, 7, 8

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
 233 F.R.D. 306 (E.D.N.Y. 2006)................................................................................ 3, 5

*Maley v. Del Global Techs. Corp.*,
 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................................................... 13

*In re Marsh ERISA Litig.*,
 265 F.R.D. 128 (S.D.N.Y. 2010) ................................................................................... 3

*In re Metlife Demutualization Litig.*,
 689 F. Supp. 2d 297 (E.D.N.Y. 2010) ........................................................................... 10

*Newman v. Stein*,
 464 F.2d 689 (2d Cir. 1972) ......................................................................................... 3

*In re Nissan Radiator/Transmission Cooler Litig.*,
 No. 10-cv-7493, 2013 WL 4080946 (S.D.N.Y. May 30, 2013)........................................... 7

*Padro v. Astrue*,
 No. 11-cv-1788, 2013 WL 5719076 (E.D.N.Y. Oct. 18, 2013) ................................... 5, 15

*In re PaineWebber Ltd. P'ships Litig.*,
 171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................................... 3

*In re Priceline.com, Inc. Sec. Litig.*,
 No. 00-cv- 1884, 2007 WL 2115592 (D. Conn. July 20, 2007)........................................... 4

*In re Sinus Buster Prods. Consumer Litig.*,
 No. 12-CV-2429, 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) ........................................ 7

*In re Veeco Instruments Inc. Sec. Litig.*,
 No. 05 MDL 01695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)................................ 13, 14

*In re Visa Check/Mastermoney Antitrust Litig.*,
 297 F. Supp. 2d 503 (E.D.N.Y. 2003) ........................................................................... 13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005) ....................................................................................... 1, 2

*Willix v. Healthfirst, Inc.*,
    No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)............................................. 7

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ................................................................................. 13

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................... 13, 14, 17

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Douglas Drees and Allen Altman ("Plaintiffs"), respectfully submit this memorandum of law in support of their motion for final approval of the class action Settlement and approval of the proposed plan for allocating the Net Settlement Fund.[1]

## I.   INTRODUCTION

The Court should approve the proposed Settlement because it is an extraordinary result for the Class. Following almost three years of hard-fought litigation and negotiation, Plaintiffs secured a cash payment of $9,500,000 in exchange for the release of all claims arising from this Action. This amount equates to nearly 17% of total class-wide damages. Considering the fact that the median percentage of settlements in cases of this size is between 5% and 8%, Plaintiffs' results are truly exceptional for the Class.

In the Second Circuit, "[a] court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted). Each of those factors is present here. Plaintiffs performed an in-depth investigation to obtain detailed facts in support of their claims against Defendants. They defeated a motion to dismiss the complaint under Rule 12(b)(6), conducted party and non-party discovery, obtained class certification, and participated in arm's length mediation. Only after developing a thorough understanding of the strengths and weaknesses of their claims did Plaintiffs agree to the proposed Settlement. In their judgment (with the advice of counsel), the risks and rewards of further litigation weighed heavily in favor of settling this case under the terms presently before the Court.

If approved, the Net Settlement Fund will be distributed fairly between Class Members in accordance with the proposed Plan of Allocation. The Plan of Allocation is simple to understand and easy to administer (thereby saving money in the form of costs charged by the Claims

---

[1] Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation of Settlement dated February 5, 2018 (Dkt. No. 78) (the "Settlement" or the "Stipulation").

Administrator). Class Members will receive a *pro rata* share of the Net Settlement Fund determined by the number of shares they held at the end of the Class Period. The amount of money ultimately distributed to these Class Members will depend on the number of Class Members who submit timely claims.

For the reasons set forth below, Plaintiffs respectfully request that the Court grant their motion in its entirety and approve the Settlement and Plan of Allocation in final.

## II.   ARGUMENT

### A.   The Proposed Settlement Warrants Final Approval.

Under Federal Rule of Civil Procedure Section 23(e), a class action settlement should be approved if the Court finds it "fair, reasonable, and adequate." "A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart*, 396 F.3d at 116; *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("The District Court must carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness, and that it was not a product of collusion."). In this Circuit, public policy favors the settlement of disputed claims among private litigants, particularly in complex class actions such as this one. *Wal-Mart*, 396 F.3d at 116 ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'"); *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 171 (E.D.N.Y. 2012) ("Settlement approval is within the Court's discretion, which 'should be exercised in light of the general judicial policy favoring settlement.'"). "Courts examine procedural and substantive fairness in light of the 'strong judicial policy favoring settlements' of class action suits.'" *Flores v. Anjost Corp.*, No. 11 Civ. 1531, 2014 WL 321831, at *4 (S.D.N.Y. Jan. 29, 2014) (quoting *Wal-Mart*, 396 F.3d at 116).

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while a court should not give rubber stamp approval to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974), *abrogated on other grounds by, Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir.

2000). Because "'[t]he very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation,' the court must not turn the settlement hearing 'into a trial or a rehearsal of the trial.'" *Newman v. Stein*, 464 F.2d 689, 691-92 (2d Cir. 1972); *see Chavarria*, 875 F. Supp. 2d at 172 (a court may not "conduct a mini-trial of the merits of the action."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) ("In deciding whether to approve a settlement, a court 'should not attempt to approximate a litigated determination of the merits of the case lest the process of determining whether to approve a settlement simply substitute[s] one complex, time consuming and expensive litigation for another.'").

1.      **The Settlement was Reached after Arm's Length Negotiations with the Assistance of an Experienced Mediator.**

A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations; and great weight is accorded to the recommendations of counsel, who are closely acquainted with the facts of the underlying litigation. *See, e.g., Khait v. Whirlpool Corp.*, No. 06-6381, 2010 WL 2025106, at *3 (E.D.N.Y. Jan. 20, 2010); *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 315 (E.D.N.Y. 2006). A court may find the negotiating process is fair where, as here, "the settlement resulted from arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability . . . necessary to effective representation of the class's interests." *D'Amato*, 236 F.3d at 85; *In re China Sunergy Sec. Litig.*, No. 07-CV-7895, 2011 WL 1899715, at **3-4 (S.D.N.Y. May 13, 2011); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

The initial presumption of fairness and adequacy applies here because all of the parties are represented by counsel with extensive experience litigating these types of claims (Porritt Decl. ¶¶70, 73); the Settlement was the result of arm's-length negotiations (*id.* at ¶¶4, 16, 28); and the parties understood the strengths and weaknesses of the claims and defenses before the Settlement was reached (Porritt Decl. ¶¶50-58).

3

The Settlement was also reached with assistance of an experienced mediator, Robert A. Meyer, Esq. Mr. Meyer oversaw the mediation that resulted in the Settlement after issuing a mediator's proposal. The active involvement of an experienced independent mediator is strong evidence of the absence of collusion and further supports the presumption of fairness. *See, e.g., In re Priceline.com, Inc. Sec. Litig.*, No. 00-cv- 1884, 2007 WL 2115592, at *3 (D. Conn. July 20, 2007) ("The settlement in this case was ably negotiated at arms' length with the impartial participation of Judge Politan and attorney [Robert] Meyer and is, therefore, entitled to a presumption of fairness and adequacy."); *see also D'Amato*, 236 F.3d at 85 (a mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (parties were entitled to a presumption of fairness where mediator facilitated arms-length negotiations); *In re AOL Time Warner, Inc. Sec. and ERISA Litig.*, No. 02 Civ. 5575, 2006 WL 903236, at *7 (S.D.N.Y. Apr. 6, 2006) (noting that involvement of mediator in pre-certification settlement negotiations helped "ensure that the proceedings were free of collusion and undue pressure").

## 2. The Application of the *Grinnell* Factors Supports Approval of the Settlement as Fair, Reasonable, and Adequate

This Settlement is also substantively fair, reasonable and adequate and in the best interests of the Class. In the Second Circuit, the following factors are to be considered in evaluating a class action settlement:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery,   [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (internal citations omitted); *see also McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009); *Wal-Mart*, 396 F.3d at 117. "A court need not find that every

factor militates in favor of a finding of fairness; rather, a court considers the totality of these factors in light of the particular circumstances." *Padro v. Astrue,* No. 11-cv-1788, 2013 WL 5719076, at *4 (E.D.N.Y. Oct. 18, 2013) (citation omitted). Here, the Settlement easily satisfies the *Grinnell* factors.

a)      **The Complexity, Expense and Likely Duration of the Litigation Support Approval of the Settlement.**

"In evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) (citation omitted). Indeed, courts recognize that "[s]ecurities class actions are generally complex and expensive to prosecute." *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007). Accordingly, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *Luxottica*, 233 F.R.D. at 310.

Litigation of the claims alleged in this case raised a number of complex questions that required substantial efforts by Plaintiffs. As discussed below and in the Porritt Declaration, Plaintiffs would have had to overcome numerous hurdles in order to achieve a litigated verdict in this Action against Defendants. Even assuming that the sustained claims survived summary judgment, a jury trial would have required a substantial amount of factual and expert testimony. Whatever the outcome at trial, an appeal likely would have been taken. All of the foregoing would have posed considerable expense to the parties, and would have delayed any financial recovery for several years, assuming that Plaintiffs ultimately succeeded on their claims. Accordingly, the complexity, expense, and likely duration of the litigation support approval of the Settlement as fair and reasonable.

b)      **The Reaction of the Class Supports Approval of the Settlement.**

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *See, e.g., Chavarria*, 875 F. Supp.

2d at 173; *see also Padro*, 2013 WL 5719076, at *5 ("The fact that a small number of objections were received weighs in favor of settlement," as does "the positive reaction of the class, particularly in light of its size."). In accordance with the Court's Preliminary Approval Order, the Court-approved Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), began mailing copies of the Notice to potential members of the Class and their brokers and nominees on April 17, 2018 (the "Notice Date"). *See* Declaration of Alexander Villanova ("Villanova Decl."), at ¶5. As of June 26, 2018, an aggregate of 52,185 copies of the Notice have been disseminated to potential Class Members and their brokers and nominees. *Id.* ¶7. In addition, the Notice was published over the *PR Newswire* on April 17, 2018, and the Notice and related settlement documents are available on a website specifically created for the Settlement, www.ResourceCapitalSecuritiesLitigation.com. *Id.* at ¶¶8, 15.

The Notice set out the essential terms of the Settlement and informed potential Class Members of, among other things, their right to opt out of the Class or object to any aspect of the Settlement, as well as the procedure for submitting Claim Forms. While the deadline set by the Court for Class Members to opt out or object to the Settlement, July 5, 2018 and July 13, 2018, respectively, has not yet passed, to date, Lead Counsel has received only one objection and no requests for exclusion. *Id.* at ¶¶16, 17. To the extent this objection or any others remain pending (*i.e.*, they are not withdrawn), Plaintiffs will respond to them in accordance with the deadline set by the Court's Preliminary Approval Order.

The small number of objections (*i.e.*, only one) weighs in favor of approving the Settlement. *See, e.g., In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 156 (S.D.N.Y. 2013) (the reaction of the class supported the settlement where "not one of the objections or requests for exclusion was submitted by an institutional investor"); *AOL Time Warner*, 2006 WL 903236, at *10 (the lack of objections from institutional investors supported approval of settlement); *In re Bisys Sec. Litig.*, No. 04 Civ 3840 (JSR), 2007 WL 2049726, at *1 (S.D.N.Y. July 16, 2007) (noting that only one individual raised any objection, "even though the class included numerous institutional investors who presumably had the means, the motive, and the sophistication to raise

objections if they thought the [requested] fee was excessive"); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 177 (W.D.N.Y. 2011) (granting final approval and noting "very little negative reaction by class members to the proposed settlement" where 11 out of 3,800 class members opted out, and 3 objected); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at * 4 (E.D.N.Y. Feb. 18, 2011) (granting final approval of the settlement where 7 out of 2,025 class members objected and 2 opted out); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374, at * 3 (S.D.N.Y. Aug. 6,  2010) (granting final approval where there were no objections but 28 of 5,262 opted out, noting that "[a] small number of objections is convincing evidence of strong support by class members").

The deadlines for submitting exclusion and objection is July 5, 2018 and July 13, 2018, respectively. Plaintiffs will address all objections, to the extent they are not withdrawn, in accordance with the Court's Preliminary Approval Order.

### c)      The Stage of the Proceedings Supports Approval of the Settlement.

"Under this factor the relevant inquiry 'is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.'" *In re Sinus Buster Prods. Consumer Litig.,* No. 12-CV-2429, 2014 WL 5819921, at *9 (E.D.N.Y. Nov. 10, 2014) (quoting *AOL Time Warner,* 2006 WL 903236, at *10). "The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Whirlpool*, 2010 WL 2025106, at *6. "The parties 'need not have engaged in extensive discovery as long as they have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make an appraisal' of the settlement.'" *AOL Time Warner*, 2006 WL 903236, at *10 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000)); *see also In re Nissan Radiator/Transmission Cooler Litig.*, No. 10-cv-7493, 2013 WL 4080946, at *7 (S.D.N.Y. May 30, 2013) (finding the factor to weigh in favor of approval even where "the parties have not engaged in extensive discovery" but after "plaintiffs conducted an investigation prior to commencing the action" and also consulted with experts concerning their

claims). Here, the successful resolution of the case occurred after almost three years of litigation and extensive discovery.  As set forth in greater detail in the Porritt Declaration, Plaintiffs extensively developed the record by, among other things:

- Performing an in-depth review and analysis of (a) Resource Capital's SEC filings; (b) research reports by securities and financial analysts; (c) transcripts of Resource Capital's earnings conference calls and industry conferences; (d) Resource Capital's press releases; (e) news and media reports concerning Resource Capital and other facts related to this action; and (f) data reflecting the pricing of Resource Capital's securities.

- Conferring extensively with experts and consultants concerning the specialized issues in the case, including the market for Resource Capital's securities, real estate financing, and troubled debt restructurings;

- Conducting months of discovery, including propounding and responding to multiple discovery requests, producing and reviewing internal documents from Resource Capital relating to the creditworthiness of the mezzanine loan at issue in this case, and issuing non-party subpoenas to entities around the country;

- Reviewing 119,887 pages of documents produced from Resource Capital alone and 51,139 pages of documents from half a dozen additional non-parties, including Moody's, Fitch Ratings, Blackstone, and Grant Thornton LLP; and

- Taking and defending expert and party depositions in connection with Plaintiffs' successful bid for class certification.

Porritt Decl. at ¶68.

Thus, at the time the Settlement was reached, Plaintiffs had "obtained sufficient information to be able to intelligently assess the strengths and weaknesses of the case and appraise settlement proposals." *Padro*, 2013 WL 5719076, at *6; *see also Whirlpool*, 2010 WL 2025106, at *6 (finding factor supported settlement where the parties informally exchanged information and participated in mediation which "allowed them to further explore the claims and defenses").

Plaintiffs had also already defeated a motion to dismiss under Rule 12(b)(6) and secured class certification under Rule 23. Plaintiffs had a well-informed basis for their belief that the Settlement – proposed by an experienced litigator and mediator – was a favorable resolution for the Class. This factor strongly supports approval of the Settlement.

### d)      The Risks of Establishing Liability and Damages Support Approval of the Settlement.

*Grinnell* requires that, in assessing the fairness, reasonableness and adequacy of a settlement, courts consider such factors as the "risks of establishing liability [and] . . . the risks of establishing damages." 495 F.2d at 463. Plaintiffs alleged that Defendants omitted to disclose various risks of exposure relating to a mezzanine loan position involving real estate assets in Puerto Rico. These omissions caused Resource Capital's stock price to be artificially inflated during the Class Period. While Plaintiffs believe that the claims have merit, they also recognize that there were significant risks as to whether they would ultimately be able to prove liability and establish damages, as well as with respect to the amount of damages that could be establish. These risks could have manifested themselves at any time throughout the remainder of the case, summary judgment, trial, or on appeal.

One issue in particular that related to liability was the timing of Resource Capital's ultimate decision to impair the value of the mezzanine loan. Plaintiffs believed that the mezzanine loan should have been impaired long before it actually was, given that credit rating agencies had been downgrading the creditworthiness of the secured certificates to which the mezzanine loan was subordinate. However, Defendants would have likely relied on internal documents showing that the mezzanine loan's impairment was appropriate in terms of timing and amount. Ultimately, the issue was factual in nature and would have required a jury to resolve. Juries are inherently risky for both plaintiffs and defendants. While Plaintiffs believed that their arguments on this point were strong, the risk of losing tended to support accepting the Settlement. Porritt Decl. at ¶¶50-52.

Another issue of concern for Plaintiffs was the risk of having to establish damages at trial. In opposition to Plaintiffs' motion for class certification, Defendants argued that Plaintiffs were

unable to calculate damages uniformly among Class Members, namely because the price of Resource Capital's stock was inflated by different amounts at various points in the Class Period depending upon what information was available to the public. Had Plaintiffs proceeded to trial, they would have needed to rely heavily on expert testimony which would have been complex and difficult for a jury to follow. Defendants would have presented testimony from an expert of their own. The risks pertaining to establishing damages also weighed in favor of accepting the Settlement. Porritt Decl. at ¶¶53-56.

While Plaintiffs expected to present persuasive testimony establishing causation and damages, Defendants likely would have presented experts in support of their positions. Plaintiffs could not be certain which experts' views would be credited by the jury, particularly given the complexity of the underlying factual issues, and who would prevail at trial in this "battle of the experts." *See, e.g., In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 332 (E.D.N.Y. 2010) ("The proof on many disputed issues – which involve complex financial concepts – would likely have included a battle of experts, leaving the trier of fact with difficult questions to resolve."); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("In such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants.").

The Settlement enables the Class to recover a substantial sum of money, while avoiding continued protracted litigation, significant challenges, and further reducing available resources for recovery. In light of all of these risks, the proposed Settlement is fair, reasonable and adequate.

e)     **The Ability of Defendants to Withstand a Greater Judgment Favors Approval of the Settlement.**

The resources available to fund a substantial recovery were a factor considered by Plaintiffs in accepting the Settlement. *See, e.g., In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 456-57 (S.D.N.Y. 2004) (recognizing that "protracted litigation could deprive the class members of the substantial amount of insurance money the partial settlement would provide" and that the settlement "would maximize the recovery of insurance money for the class"). "A defendant

is not required to 'empty its coffers' before a settlement can be found adequate." *In re Giant Interactive Group, Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011) (quotation omitted). If the other *Grinnell* factors are met, a settlement is not unfair merely because the defendants could possibly afford more. *Id.*

While Resource Capital appeared to be in sound financial condition at the time of the Settlement, there was a risk (however small) that Resource Capital could have fallen upon difficult times during the course of further litigation. This risk, when considered with the fact that there was no guarantee further litigation would result in a greater recovery, was enough to weigh in favor of the Settlement. At $9,500,000, the Settlement already presented an excellent outcome for the Class.

      **f)**      **The Range of Reasonableness of the Settlement Amount, in Light of the Best Possible Recovery and All of the Attendant Risks of Litigation, Supports Approval of the Settlement**

The last two substantive factors that courts consider are the range of reasonableness of the settlement fund in light of (i) the best possible recovery and (ii) litigation risks. In analyzing these two factors, the issue for courts is not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case. A court "consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Grinnell*, 495 F.2d at 462 (citations omitted).

The Second Circuit has described the "range of reasonableness" as "a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in . . . any litigation." *Wal-Mart Stores*, 396 F.3d at 119 (quoting *Newman*, 464 F.2d at 693). "The determination of a reasonable settlement 'is not susceptible of a mathematical equation yielding a particularized sum,' but turns on whether the settlement falls within a 'range of reasonableness.'" *Chavarria*, 875 F. Supp. 2d at 174 (citation omitted). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be

disapproved." *Grinnell*, 495 F.2d at 455. "In fact, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of a potential recovery." *Chavarria*, 875 F. Supp. 2d at 175; *Grinnell*, 495 F.2d at 455 n.2. (citation omitted).

The Settlement is well within the range of reasonableness in light of the substantial risks presented by this litigation. Estimating aggregate damages can be challenging because, among other things, assumptions must be made regarding trading activity. Here, a realistic estimate of potential maximum recoverable damages, assuming Plaintiffs prevailed on all of the sustained claims, was approximately $56 million. But those damages would be reduced or eliminated if the jury accepted some or all of Defendants' arguments.

The $9,500,000 recovery is an excellent result for the Class in light of the attendant risks of continued litigation. Indeed, Plaintiffs' recovery of 17% of the recoverable damages is in line with figures reported by NERA Economic Consulting in 2018, noting that the "median of settlement value as a percentage of [ ] investor losses" was 4.7% for cases with investor losses between $50 million and $99 million. *See* Porritt Decl. Ex. 1 at 37, Fig. 28. Additionally, according to a 2018 report by Cornerstone Research, in securities class actions where estimated damages were between $25 million and $74 million, the median recovery was only 6% of estimated damages. *See* Porritt Decl. Ex. 2 at 8, Fig. 7. In accepting the Settlement, Plaintiffs understood that "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Moreover, a court may not "substitute its judgment for that of the parties who negotiated the settlement." *Chavarria*, 875 F. Supp. 2d at 172. Plaintiffs' attorneys, Levi & Korsinsky, LLP, are intimately familiar with the facts of the case and have extensive experience prosecuting comparable securities class actions. In these circumstances, Plaintiffs' attorneys' opinion that the Settlement was reasonable is entitled to "great weight." *Padro*, 2013 WL 5719076, at *7 ("Where, as here, settlement has been reached after an arms-length negotiation, 'great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying

litigation."') (citation omitted). The recommendation of Plaintiffs also strongly supports the fairness of the Settlement. *See* Declaration of Allen Altman at ¶5; Declaration of Douglass Drees at ¶5. In sum, a review of the *Grinnell* factors strongly supports a finding that the Settlement is fair, reasonable, and adequate.

### B.       The Plan of Allocation is Fair, Reasonable, and Adequate.

The standard for approval of a plan of allocation is the same as the standard for approving the settlement as a whole: "namely, it must be fair and adequate." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) (internal quotations omitted). "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (citation omitted); *see also In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 518 (E.D.N.Y. 2003), *aff'd sub nom., Wal-Mart*, 396 F.3d 96; *Am. Bank Note*, 127 F. Supp. 2d at 429-30. Further, courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978).

Plaintiffs' proposed Plan of Allocation has a rational basis and was formulated with the assistance of Plaintiffs' experts, thus ensuring its fairness and reliability. *See Veeco*, 2007 WL 4115809, at *13. Under the proposed Plan of Allocation, each Authorized Claimant (*i.e.*, a Class Member that submits a valid and timely claim with a Recognized Loss) will receive a *pro rata* share of the Net Settlement Fund. The share that each Authorized Claimant receives will depend upon the amount of his or her Recognized Loss relative to the total aggregate Recognized Losses of all the Authorized Claimants. The Recognized Loss of each Authorized Claimant is calculated simply by multiplying a set dollar amount by the total number of shares held by the Authorized Claimant at the end of the Class Period. Depending on which securities the Authorized Claimant owned (either common stock or preferred stock), his or her claim will be paid from a portion of the Net Settlement Amount dedicated for claims arising from those securities (*i.e.*, a sub-fund). *See* Porritt Decl. at ¶¶37-38.

As described in the Porritt Declaration, the Plan of Allocation is based upon the premise that Class Members sustained damages by purchasing their stock at artificially inflated prices. Accordingly, the proposed Plan of Allocation seeks to compensate Class Members in accordance with the decrease that Resource Capital's stock price suffered upon dissemination of curative disclosures into the market, *i.e.*, the August 4, 2015 announcement concerning the impairment of the mezzanine loan. Porritt Decl. at ¶¶37-38. The Plan of Allocation mirrors the complaint's allegations, which is common in securities class actions. *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525, 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007); *see also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (deeming plan of allocation where "claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares of [company] stock" as "even handed").

The Plan of Allocation is substantially similar to other plans of allocation that have been approved and successfully implemented in other securities class action settlements, including within this Circuit. *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695, 2007 WL 4115808, at *14 (S.D.N.Y. Nov. 7, 2007) ("Each valid claim will then be calculated so that each authorized claimant will receive, on a proportionate basis, the share of the net settlement fund that the claimant's recognized loss bears to the total recognized loss of all authorized claimants."); *Global Crossing*, 225 F.R.D. at 462 ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach."). Given its sound basis and fair manner of operation, Plaintiffs request that the Court approve the proposed Plan of Allocation. *See, e.g.*, *Chavarria*, 875 F. Supp. 2d at 175 ("In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel. That is, 'as a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.'").

C.      **Notice to the Class Satisfies the Requirements of Rule 23, Due Process, and the PSLRA**

The Notice provided to the Class satisfied the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Notice also satisfied Rule 23(e)(1), which requires that notice of a settlement be "reasonable." Fed. R. Civ. P. 23(e)(1). Notice is reasonable if it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114.

Both the substance of the Notice and the method of its dissemination to potential Class Members satisfied these standards. *See In re Bank of Am. Corp. Sec., Derivative and ERISA Litig.*, 772 F.3d 125, 133 n.5 (2d Cir. 2014) (affirming sufficiency of similar notice plan). As noted above, in accordance with the Court's Preliminary Approval Order, the Claims Administrator, Epiq, has sent more than 52,000 copies of the Notice to potential Class Members and their brokers and nominees. *See* Villanova Decl. ¶7. Epiq utilized several resources to reasonably identify potential members of the Class, including information provided by Resource Capital, a proprietary list maintained by Epiq of the largest and most common U.S. Banks, brokerage firms, and other nominees, and research of Form 13-F filed with the SEC. *Id.* ¶¶5-7. The Notice requires brokers and nominees, within ten days, to either (i) send to the beneficial owners of the securities, or (ii) provide to Epiq the names and addresses of such persons. *Id.* ¶4.

Plaintiffs also caused the Notice to be published over the *PR Newswire*, and copies of the Notice were made available on a dedicated website maintained by Epiq. *Id.* ¶8, 15.

This combination of individual mail to Class Members who could be identified with reasonable effort, supplemented by summary and electronic notice in widely circulated publications, was "the best notice . . . practicable under the circumstances" and satisfies the requirements of due process, Rule 23, and the PSLRA. Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *Padro*, 2013 WL 5719076, at *3 ("Notice need not be perfect, but need be only the best notice practicable

15

under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members."); *see also Arace v. Thompson*, No. 08 Civ. 7905, 2011 WL 3627716, at *4 (S.D.N.Y. Aug. 17, 2011) (finding notice of settlement published on "a nationally-circulated business-oriented publication catering to investors," "sufficient[] [to] apprise[] . . . shareholders of the nature of the proposed settlement").

## III.   CONCLUSION

Plaintiffs respectfully request that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate.

DATED: June 29, 2018                    Respectfully submitted,

By:    /s/ Adam Apton
                                                    Nicholas I. Porritt
                                                    Adam M. Apton
                                                    LEVI & KORSINSKY, LLP
                                                    1101 30th Street NW, Suite 115
                                                    Washington, DC 20007
                                                    Telephone:  202-524-4290
                                                    Facsimile:   202-333-2121

                                                    *Attorneys for Plaintiffs Douglas Drees and*
                                                    *Allen Altman and Lead Counsel for the Class*