# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

DAREN LEVIN, Individually and on
Behalf of All Others Similarly Situated,

Plaintiffs,

v.

RESOURCE CAPITAL CORP.,
JONATHAN Z. COHEN, DAVID J.
BRYANT, ELDRON C. BLACKWELL,
and DAVID E. BLOOM,

Defendants.

Docket No.: 1:15-cv-07081-LLS

Hon. Louis L. Stanton

Date: August 3, 2018
Time: 12:00 p.m.
Courtroom: 21C

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR: (I) AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES; AND (II) INCENTIVE AWARDS TO PLAINTIFFS

Nicholas I. Porritt
Adam M. Apton
LEVI & KORSINSKY, LLP
1101 30th Street NW, Suite 115
Washington, DC 20007
Telephone:  202-524-4290
Facsimile:   202-333-2121

*Attorneys for Plaintiffs Douglas Drees
and Allen Altman and Lead Counsel
for the Class*

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     ARGUMENT .......................................................................................................2

        A.      Lead Counsel is Entitled to an Award of Attorneys' Fees from the
                Common Fund ........................................................................................2

        B.      The Requested Attorneys' Fees are Reasonable Under the Percentage-of-
                the-Fund Method....................................................................................4

        C.      A Review of the Goldberger Factors Confirms that the Requested 33%
                Fee is Fair and Reasonable ....................................................................5

                1.      The Time and Labor Expended by Lead Counsel Support the
                        Requested Fee ..............................................................................5

                2.      The Magnitude and Complexity of the Action Support the
                        Requested Fee ..............................................................................7

                3.      The Risks of the Litigation Support the Requested Fee ...............7

                4.      The Quality of Lead Counsel's Representation Supports the
                        Requested Fee ..............................................................................9

                5.      Second Circuit Precedent Supports the 33% Fee as a Reasonable
                        Percentage of the Total Recovery ...............................................11

                6.      Public Policy Consideration Supports the Requested Fee ..........12

                7.      Plaintiffs' Approval and the Settlement Class' Reaction Support
                        the Requested Fee .......................................................................12

        D.      A Lodestar Cross-Check Confirms the Reasonableness of the Fee
                Request..................................................................................................13

        E.      Lead Counsel's Litigation Expenses are Reasonable and Should Be
                Approved for Reimbursement................................................................15

        F.      Plaintiffs Should Be Awarded Incentive Awards ..................................16

III.    CONCLUSION ..................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*,
No. 03 MDL 1529, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ...................................... 10

*In re Am. Int'l Grp, Inc. 2008 Sec. Litig.*,
No. 08-cv- 4772 (S.D.N.Y.) ........................................................................................ 4

*In re American Bank Note Holographics*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ........................................................................ 8

*Anwar v. Fairfield Greenwich Ltd.*,
No. 09-CV-118 (VM), 2012 U.S. Dist. LEXIS 78929 (S.D.N.Y. June 1, 2012) .................. 13

*In re Apac Teleservs., Inc. Sec. Litig.*,
No. 97 Civ. 9145, (S.D.N.Y. June 29, 2001) (Dkt. 54) ...................................................... 11

*In re AremisSoft Corp. Sec. Litig.*,
210 F.R.D. 109 (D.N.J. 2002) .................................................................................... 13

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) ................................................................................................ 2

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ........................................................................ 15

*Becher v. Long Island Lighting Co.*,
64 F.Supp.2d 174 (E.D.N.Y.1999) ............................................................................ 5

*Blum v. Stenson*,
465 U.S. 886 (1984) ................................................................................................ 4

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ................................................................................................ 2

*Buccellato v. AT&T Operations, Inc.*,
No. 10-463, 2011 U.S. Dist. LEXIS 85699 (N.D. Cal. June 30, 2011) ................................ 14

*In re China Sunergy Sec. Litig.*,
No. 07 Civ. 7895, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ........................................ 14

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ...................................................................................... 7

*City of Providence v. Aéropostale, Inc.*,
2014 U.S. Dist. LEXIS 64517, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ................ 11, 13

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010) ............................ 7, 8, 10, 12

*In re Currency Conversion Fee Antitrust Litig.*,
263 F.R.D. 110 (S.D.N.Y. 2009) ................................................................................ 16

*Davis v. J.P. Morgan Chase & Co.*,
    827 F. Supp. 2d 172 (W.D.N.Y. 2011) ............................................................................... 3, 5

*Dornberger v. Metro. Life Ins. Co.*,
    203 F.R.D. 118 (S.D.N.Y. 2001) ........................................................................................ 16

*Dupler v. Costco Wholesale Corp.*,
    705 F. Supp. 2d 231 (E.D.N.Y. 2010) ................................................................................ 16

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*,
    586 F. Supp. 2d 732 (S.D. Tex. 2008) ............................................................................... 14

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    No. MDL 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ......................................... 4

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
    No. 02-cv-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ............................... 7, 9, 11, 12

*Flores v. Anjost Corp.*,
    No. 11 Civ. 1531, 2014 WL 321831 (S.D.N.Y. Jan. 29, 2014) ......................................... 4, 5

*Fogarazzo v. Lehman Bros. Inc.*,
    2011 U.S. Dist. LEXIS 17747, 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ...................... 11

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2001) ..................................................................................... 2, 11

*In re Global Crossing Sec. and ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................................... 9

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ........................................................................................ passim

*Hayes v. Harmony Gold Mining Co.*,
    509 Fed. App'x 21 (2d Cir. 2013) ....................................................................................... 3

*Hayes v. Harmony Gold Mining Co.*,
    No. 08 Civ. 03653, 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) ......................................... 4

*Hicks v. Morgan Stanley*,
    No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................... 2, 11, 15

*In re IMAX Sec. Litig.*,
    No. 06 CIV. 6128 NRB, 2012 WL 3133476 (S.D.N.Y. Aug.1, 2012) ................................... 4

*J.I. Case Co. v. Borak*,
    377 U.S. 426 (1964) ............................................................................................................ 2

*Khait v. Whirlpool Corp.*,
    No. 06-cv-6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ............................... 3, 4, 5, 11

*Maley v. Del Global Techs. Corp*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................................................... 11, 13

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................................... 9, 10

*In re Metlife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ............................................................................. 8

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ......................................................................................................... 4

*Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
   2009 U.S. Dist. LEXIS 27899, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ..................... 11

*Monzon v. 103W77 Partners, LLC*,
   No. 13 Civ. 5951, 2015 WL 993038 (S.D.N.Y. Mar. 5, 2015) ............................................. 3

*In re PaineWebber Ltd. P'Ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ..................................................................................... 12

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014) ...................................................................... 3, 4, 12

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001) ............................................................................. 14

*In re RJR Nabisco Sec. Litig.*,
   No. 88 Civ. 7905 (MBM), 1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992) .......... 13

*Roberts v. Texaco, Inc.*,
   979 F. Supp. 185 (S.D.N.Y. 1997) ................................................................................. 14

*Savoie v. Merchs. Bank*,
   166 F.3d 456 (2d Cir. 1999) ............................................................................................ 4

*Sewell v. Bovis Lend Lease, Inc.*,
   No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ........................................ 3

*Steinver v. Am. Broad Co.*,
   248 F. App'x 780 (9th Cir. 2007) ................................................................................... 14

*In re Sumitomo Copper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. 1999) ...................................................................................... 7

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ..................................................................... 2, 7, 13

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
   No. 01-CV-11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ...................................... 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .................................................................................................. 2, 15

*Van Vranken v. Atlantic Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) ................................................................................ 14

*In re Van Der Moolen Holding N. V. Sec. Litig.*,
   2006 U.S. Dist. LEXIS 98433 (S.D.N.Y. Dec. 7, 2006) ...................................................... 11

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)........................ 2, 9, 12, 13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ................................................................................................ 3, 4

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................... 13, 14, 17

## I.      INTRODUCTION

Court-appointed Lead Counsel Levi & Korsinsky, LLP ("Lead Counsel"), achieved an extraordinary result for the Settlement Class in this case. After nearly three years of litigation and over 2,000 hours of billable work on a completely contingent basis, Lead Counsel secured a Settlement of $9,500,000. This figure represents 17% of the Class's total estimated damages—which is far better than the settlements in many cases similar in size to the one at hand. In exchange for their efforts, Lead Counsel applies for an award of attorneys' fees in the amount of $3,166,667 (33% of the Settlement Amount).[1]

Lead Counsel also seeks reimbursement of out-of-pocket expenses it incurred in the course of the litigation. These expenses total $199,463.67 and are largely attributable to expert fees paid by Lead Counsel for assistance in connection with evaluating damages and class certification issues. Lead Counsel has not been reimbursed any amounts at all since commencing this litigation back in September 2015. Lead Counsel respectfully requests that they be reimbursed now that the case is over.

Finally, in exchange for their assistance and willingness to serve in representative capacities during the action, Lead Counsel requests that Plaintiffs Douglas Drees and Allen Altman receive incentive awards to compensate them for their time and effort. They both participated heavily in documentary discovery and appeared for full-day depositions. They were appointed by this Court as class representatives and, to that end, faithfully fulfilled their fiduciary duties to the Class.

For the reasons set forth below, Lead Counsel respectfully requests that the Court grant its motion in its entirety.

---

[1] Unless otherwise defined, capitalized terms herein have the same meaning as set forth in the Stipulation of Settlement, dated as of February 5, 2018 (the "Settlement" or the "Stipulation") (Dkt. No. 78).

## II.    ARGUMENT

### A.    <u>Lead Counsel is Entitled to an Award of Attorneys' Fees from the Common Fund</u>

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Courts recognize that awards of fair attorneys' fees from a common fund "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and therefore to discourage future alleged misconduct of a similar nature. *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008); *see In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007) (same); *see also In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) (an award of appropriate attorneys' fees should "provid[e] lawyers with sufficient incentive to bring common fund cases that serve the public interest" and "attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so") (citations omitted).

The Supreme Court has emphasized that private securities actions, such as this one, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'") (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)). Compensating plaintiffs' counsel for the risks they take in bringing these actions is essential because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

Most courts, including this courts within this District, have found that the percentage-of-the-fund method, under which counsel is awarded a percentage of the fund that it recovered, is the preferred means to determine a fee because it "directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate the attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources." *Monzon v. 103W77 Partners, LLC*, No. 13 Civ. 5951, 2015 WL 993038, at *2 (S.D.N.Y. Mar. 5, 2015) (citing *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *10 (S.D.N.Y. Apr. 16, 2012) ("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded.")); *see Khait v. Whirlpool Corp.,* No. 06-cv-6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (Carter, J.).[2]

The Second Circuit has expressly approved the percentage method, recognizing that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-50 (holding that either the percentage-of-the-fund method or lodestar method may be used to determine appropriate attorneys' fees); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) (the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"). The Second

---

[2] *See also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Hayes v. Harmony Gold Mining Co.,* 509 Fed. App'x 21, 24 (2d Cir. 2013) (unpubl.) ("[A]s the district court recognized, the prospect of a percentage fee award from a common settlement fund, as here, aligns the interests of class counsel with those of the class."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014) ("The percentage method better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the results they achieve for their clients, rather than on the number of motions they file, documents they review, or hours they work. The percentage method also accords with the overwhelming prevalence of contingency fees in the market for plaintiffs' counsel . . . .") (citation omitted); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011) (the "advantages of the percentage method . . . are that it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made, and that it is consistent with the system typically used by individual clients to compensate their attorneys").

Circuit, and Courts within this District, have acknowledged that the "trend in this Circuit is toward the percentage method." *Whirlpool,* 2010 WL 2025106, at *8.[3]

**B.      The Requested Attorneys' Fees are Reasonable Under the Percentage-of-the-Fund Method**

The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 33% of the recovery. *See Blum v. Stenson*, 465 U.S. 886, 903-04 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring). Moreover, at 33%, the requested fee is equal to the percentage fee awards granted in many other comparable securities class actions within the Second Circuit. *See, e.g., In re Facebook, Inc. IPO Sec. & Derivative Litig*., No. MDL 12-2389, 2015 WL 6971424, at *11 (S.D.N.Y. Nov. 9, 2015), *aff'd sub nom In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016) (awarding 33% of total Settlement); *In re IMAX Sec. Litig.*, No. 06 CIV. 6128 NRB, 2012 WL 3133476, at *7 (S.D.N.Y. Aug.1, 2012) (finding an award of 33% of a $12 million settlement reasonable); *Hayes v. Harmony Gold Mining Co.*, No. 08 Civ. 03653, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding 33.3% of $9 million settlement fund), *aff'd*, 509 F. App'x 21 (2d Cir. 2013) (unpubl.); *In re Blech Sec. Litig.*, No. 94 CIV. 7696(RWS), 2002 WL 31720381, at *1 (S.D.N.Y. Dec.4, 2002) (finding an award of 33–1/3% reasonable); *Becher v. Long Island Lighting Co.*, 64 F.Supp.2d 174, 182

---

[3] *See also Wal-Mart*, 396 F.3d at 121; see *also Davis*, 827 F. Supp. 2d at 183-85; *Payment Card Interchange Fee*, 991 F. Supp. 2d at 440 ("The trend in this Circuit, and the method I adopt here, is a percentage of the fund."); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825, 2010 WL 2653354, at *2 (E.D.N.Y. June 24, 2010); *In re Am. Int'l Grp, Inc. 2008 Sec. Litig.,* No. 08-cv-4772 (S.D.N.Y.), Order filed March 20, 2015 (DKT No. 517); *Flores v. Anjost Corp.*, No. 11 Civ. 1531, 2014 WL 321831, at *8 (S.D.N.Y. Jan. 29, 2014) ("The trend in this Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases like this one.").

(E.D.N.Y.1999) (citations omitted) (A fee award of one-third of the Settlement Fund "is well within the range accepted by courts in this circuit.").

The requested 33% fee is also well within the range of percentage fees awarded in other, non-securities, complex class actions within the Second Circuit further confirming the reasonableness of the requested 33% award. *See, e.g., Whirlpool,* 2010 WL 2025106, at *8 (Carter, J.) (awarding fees of 33% of $9.25 million settlement fund in FLSA case; "Class Counsel's request for 33% of the Fund is reasonable and 'consistent with the norms of class litigation in this circuit"; citing other awards of 33%); *Flores*, 2014 WL 321831, at *8 (awarding fees of 1/3 of settlement amount in wage-and-hour case); *Davis*, 827 F. Supp. 2d at 185-86 (awarding fees of 1/3 of $42 million settlement fund in wage-and-hour case).

### C.   A Review of the *Goldberger* Factors Confirms that the Requested 33% Fee is Fair and Reasonable

The appropriate criteria for courts within the Second Circuit to consider when reviewing a request for attorneys' fees in a common-fund case include the "*Goldberger*" factors:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of the representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50 (internal quotes and citation omitted), *cited in BofA*, 772 F.3d at 134 (affirming attorneys' fee award, over objection, that was "based upon an application of the criteria set out in *Goldberger*"). Consideration of these factors demonstrates that the fee requested by Lead Counsel is reasonable.

### 1.   The Time and Labor Expended by Lead Counsel Support the Requested Fee

The work undertaken by Lead Counsel in prosecuting this complex securities class action and arriving at this Settlement has been time-consuming and challenging. Over the past two and a half years, Lead Counsel, while striving to efficiently and effectively represent the interests of the Settlement Class, dedicated a substantial amount of labor, time, and money to pursue and resolve

the claims. As set forth in greater detail in the Declaration of Nicholas I. Porritt, Lead Counsel's efforts included, among other things:

- Performing an in-depth review and analysis of (a) Resource Capital's SEC filings; (b) research reports by securities and financial analysts; (c) transcripts of Resource Capital's earnings conference calls and industry conferences; (d) Resource Capital's press releases; (e) news and media reports concerning Resource Capital and other facts related to this action; and (f) data reflecting the pricing of Resource Capital's securities.

- Conducting a thorough investigation into the law and facts of the case;

- Conferring extensively with experts and consultants concerning the specialized issues in the case, including in drafting the Complaint, and when analyzing class certification, loss causation, and damages;

- Drafting the detailed Amended Complaint based on Lead Counsel's extensive factual investigation and legal research into the applicable claims;

- Preparing an opposition in response to Defendants' motions to dismiss;

- Conducting months of discovery, including propounding and responding to multiple discovery requests, and producing and reviewing documents, including reviewing over 170,000 pages of documents produced from Resource Capital and several non-parties, including Moody's, Fitch Ratings, BlackRock, and Grant Thornton LLP;

- Drafting Plaintiffs' mediation statement, analyzing Defendants' mediation statement, and preparing for and participating in the mediation process, including a full-day mediation session held before a respected mediator;

- Drafting the detailed Second Amended Complaint based on Lead Counsel's extensive factual investigation and legal research into the applicable claims; and

- Preparing the Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel, including working with experts and preparing and taking expert and party deposition testimony.

In total, as set forth in the accompanying Declaration of Nicholas I. Porritt, Lead Counsel expended over 2,000 hours prosecuting the Action. *See* Porritt Decl. at ¶¶4, 79. The significant amount of time and effort devoted to this case by Lead Counsel confirms that the fee requested here is reasonable.

### 2. The Magnitude and Complexity of the Action Support the Requested Fee

Courts have long recognized that securities class actions are "notably difficult and notoriously uncertain." *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010) (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)). This case, in particular, was extremely complex. It involved complicated accounting rules pertaining to real estate finance and the creditworthiness of a portion of a mezzanine loan within a much larger collateralized security. Lead Counsel was required to seek expert assistance with regard to building a theory of liability. Porritt Decl. ¶23. Damages also presented difficult issues, as Defendants were intent on challenging Plaintiffs' ability to prove loss causation. Porritt Decl. ¶26.

This area of litigation is specialized, and even more so when dealing with the type of financial instruments at issue in this litigation. Accordingly, the magnitude and complexity of the Action support the conclusion that the requested fee is fair and reasonable.

### 3. The Risks of the Litigation Support the Requested Fee

The risk of the litigation is often considered the most important *Goldberger* factor. *See Goldberger,* 209 F.3d at 54; *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825, 2010 WL 2653354 at *5 (E.D.N.Y. June 24, 2010); *Telik,* 576 F. Supp. 2d at 592. The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted), *abrogated on other grounds by Goldberger*, 209 F.3d 43 (2d Cir. 2000). The Court should bear in mind that "[l]ittle about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Comverse*, 2010 WL 2653354, at *5.

Here, Plaintiffs alleged claims for false statements and omissions regarding Resource Capital's disclosures over a mezzanine loan position. Plaintiffs alleged that Defendants concealed that Resource Capital was exposed to a risk arising from the fact that the mezzanine loan was secured by significant real estate assets in Puerto Rico. While Lead Counsel believes that the claims have merit, there were significant risks as to whether Plaintiffs would ultimately be able to prove liability and establish damages, as well as with respect to the amount of damages that could be established. Specifically, whether and to what extent the mezzanine loan should have been impaired earlier in time was a major question of fact, one that a jury could have potentially decided in favor of Defendants. Porritt Decl. ¶¶50-53. Although the Court held that Plaintiffs successfully stated a claim for relief in response to Defendants' motion to dismiss (which was not an easy task under the heightened pleading standard of the PSLRA), Lead Counsel understood that risks remained in further prosecution. These risks could have manifested themselves at any time throughout the remainder of the case, including during summary judgment, trial, or on appeal.

Several of the contested issues, including loss causation, would ultimately have required expert testimony before the jury. While Lead Counsel expected to present persuasive testimony establishing causation and damages, Defendants likely would have presented experts in support of their positions. Porritt Decl. ¶¶54-55. Lead Counsel could not be certain which experts' views would be credited by the jury, particularly given the complexity of the underlying factual issues, and who would prevail at trial in this "battle of the experts." *See, e.g., In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 332 (E.D.N.Y. 2010) ("The proof on many disputed issues – which involve complex financial concepts – would likely have included a battle of experts, leaving the trier of fact with difficult questions to resolve."); *In re American Bank Note Holographics*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("In such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants.").

Accordingly, the risks faced by Lead Counsel were very real. In the face of these uncertainties, Lead Counsel undertook this case on a wholly contingent basis, knowing that the litigation could last for years and would require it to devote substantial attorney time and significant litigation expenses with no guarantee of compensation. "There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise." *Veeco*, 2007 WL 4115808, at *6. Lead Counsel's assumption of this contingency-fee risk strongly supports the reasonableness of the requested fee. *See FLAG Telecom*, 2010 WL 4537550, at *27 ("the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### 4. The Quality of Lead Counsel's Representation Supports the Requested Fee

The quality of the representation is another important factor that supports the reasonableness of the requested fee. The quality of the representation here is best evidenced by the quality of the result achieved. *See Goldberger,* 209 F.3d at 55; *Veeco*, 2007 WL 4115808, at *7; *In re Global Crossing Sec. and ERISA Litig.,* 225 F.R.D. 436, 467 (S.D.N.Y. 2004). The quality of Lead Counsel's efforts in the litigation, together with Lead Counsel's substantial experience in securities class actions and its commitment to the litigation, provided Lead Counsel with the leverage necessary to negotiate the favorable Settlement. Here, the $9.5 million recovery obtained

9

by Lead Counsel is an excellent result for the Settlement Class in light of the attendant risks of continued litigation discussed above.[4]

The skill and substantial experience of counsel in the specialized field of shareholder securities litigation also support the reasonableness of the requested fee. *See Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814, 2004 WL 1087261, at *6 (S.D.N.Y. May 14, 2004). Lead Counsel specializes in complex securities litigation, and is highly experienced in such litigation, with a successful track record in securities cases throughout the country. *See* Firm Resume, Porritt Decl., Ex. 3.

Finally, courts consider the quality of the opposition faced by class counsel when assessing the quality of counsel's performance. *See, e.g., Marsh*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement"); *Veeco*, 2007 WL 4115808, at *7 (among the factors supporting a 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*, No. 03 MDL 1529, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work").

Here, Lead Counsel was opposed by Covington & Burling LLP, a very skilled and highly respected defense firm representing the Defendants. They spared no effort in the defense of their clients. In the face of this knowledgeable and formidable defense, Lead Counsel was nonetheless

---

[4] As detailed in the Porritt Declaration, a realistic estimate of potential maximum recoverable damages, assuming Plaintiffs prevailed on all of the sustained claims, was approximately $56 million. But those damages would have been reduced or eliminated if the jury accepted Defendants' arguments. The recovery of almost 17.3% of the maximum recoverable damages is well above the median recoveries in cases of similar size. As reported by NERA Economic Consulting in 2018, the "median of settlement value as a percentage of [ ] investor losses" was 4.7% for cases with investor losses between $50 million and $99 million. See Porritt Decl. Ex. 1 at 37, Fig. 28. Additionally, according to a 2018 report by Cornerstone Research, in securities class actions where estimated damages were between $25 million and $74 million, the median recovery was only 6% of estimated damages. See Porritt Decl. Ex. 2 at 8, Fig. 7.

able to develop a case that was sufficiently strong to persuade the Defendants, and their insurance carriers, to settle on terms that are favorable to the Settlement Class. Porritt Decl. ¶73.

**5.      Second Circuit Precedent Supports the 33% Fee as a Reasonable Percentage of the Total Recovery**

Courts have interpreted the next factor – the requested fee in relation to the settlement – as requiring the review of the fee requested in terms of the percentage it represents of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *Comverse*, 2010 WL 2653354, at *3. As discussed above, the requested 33% fee is well within the range of percentage fees that courts in the Second Circuit, including this Court, and around the country have awarded in class actions. Accordingly, the requested fee is reasonable in relation to the size of the Settlement. *See, e.g., City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, No. 1:12-cv-01203-VEC, 2015 U.S. Dist. LEXIS 181932, at *12 (S.D.N.Y. Oct. 15, 2015) (awarded fees of 30% of $33 million recovery, plus expenses); *City of Providence v. Aéropostale, Inc.,* 2014 U.S. Dist. LEXIS 64517, 2014 WL 1883494, at *20 (S.D.N.Y. May 9, 2014) (awarding 33% of $15 million settlement); *Landmen Partners Inc. v. Blackstone Grp. L.P.*, No. 08-cv-03601-HB-FM, slip op. at 5 (S.D.N.Y. Dec. 18, 2013) (awarded fees of 33-1/3% of $85 million recovery, plus expenses); *Bd. of Trs. of the Operating Eng'rs Pension Tr. v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 09-cv-09333-KBF, slip op. at 1 (S.D.N.Y. Nov. 20, 2013) (awarded fees of 30% of $23 million recovery, plus expenses); *Citiline Holdings, Inc. v. iStar Fin. Inc.*, No. 1:08-cv-03612-RJS, slip op. at 1 (S.D.N.Y. Apr. 5, 2013) (awarded fees of 30% of $29 million recovery, plus expenses); *Fogarazzo v. Lehman Bros. Inc.*, 2011 U.S. Dist. LEXIS 17747, 2011 WL 671745, *4 (S.D.N.Y. Feb. 23, 2011) (awarding 33.3% of $6.75 million settlement); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2001) (awarding 33% of $13 million settlement); *In Van Der Moolen Holding N. V. Sec. Litig.*, 2006 U.S. Dist. LEXIS 98433 (S.D.N.Y. Dec. 7, 2006) (awarding 33 1/3% of $8 million settlement) (ECF No. 45) (Ex. 11); *Maley v. Del Global Techs. Corp*, 186 F. Supp. 2d 358, 367-68 (S.D.N.Y. 2002) (awarding 33 1/3% of $11.5 million settlement and citing two cases which awarded 33 1/3%

of the settlement amount: *In re Apac Teleservs., Inc. Sec. Litig.*, No. 97 Civ. 9145, slip op. at 2 (S.D.N.Y. June 29, 2001) (Dkt. 54), awarding 33 1/3% of $21 million settlement; and *Newman v. Caribiner Int'l Inc.*, No. 99 Civ. 2271 (S.D.N.Y. Oct. 25, 2001) (Dkt. 31) (awarding 33 1/3 of $15 million settlement); *see also Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 U.S. Dist. LEXIS 27899, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases awarding over 30% and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Khait v. Whirlpool Corp.*, 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement).

### 6.   Public Policy Consideration Supports the Requested Fee

Public policy strongly favors rewarding firms for bringing successful securities actions like this one. *See FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *Hicks*, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding."). Accordingly, public policy favors granting Lead Counsel's fee and expense application here.

### 7.   Plaintiffs' Approval and the Settlement Class' Reaction Support the Requested Fee

Plaintiffs were involved in the prosecution and settlement in this Action, and have approved the requested fee. *See* Declarations of Douglas Drees and Allen Altman. The reaction of the Settlement Class also supports the requested fee. As of June 26, 2017, the Claims Administrator has sent the Notice to 52,185 potential Settlement Class Members and their brokers and nominees (Villanova Decl. ¶7), informing them that, among other things, Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 33% of the Settlement Amount. Villanova Decl. Ex. A. While the time to object to the fee application does not expire

until July 5, 2018, to date, there has been only one objection and that objection relates to the settlement, not the requested attorneys' fees. Villanova Decl. ¶17. Should any additional objections be received, Lead Counsel will address them in its reply papers. The general lack of objections from Class Members strongly demonstrates their approval of the Settlement and the requested fee award. *See, e.g., Veeco*, 2007 WL 4115809, at *7 ("The lack of objections provides effective evidence of the fairness of the Settlement."); *In re PaineWebber Ltd. P'Ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("the absence of objections may itself be taken as evidencing the fairness of a settlement") (citation omitted), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

### D.     A Lodestar Cross-Check Confirms the Reasonableness of the Fee Request

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit encourages district courts to cross-check the proposed award against counsel's lodestar. *See Goldberger*, 209 F.3d at 50; *Payment Card Interchange Fee*, 991 F. Supp. 2d at 447-48. In cases like this, fees representing multiples of the lodestar are regularly awarded to reflect the contingency-fee risk and other relevant factors. *See, e.g., FLAG Telecom*, 2010 WL 4537550, at *26 ("Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."); *Comverse*, 2010 WL 2653354, at *5 ("Where … counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar."). Accordingly, in complex contingent litigation, lodestar multipliers between 2 and 5 are commonly awarded. Indeed, this Court has previously recognized that "[a] multiplier of 2.42 is well within the range of lodestar multipliers approved by courts in the Second Circuit," noting that "multipliers of 3 to 4.5 to be common." *Anwar v. Fairfield Greenwich Ltd.*, No. 09-CV-118 (VM), 2012 U.S. Dist. LEXIS 78929, at *8 (S.D.N.Y. June 1, 2012). Courts within this district have, when warranted, awarded plaintiffs attorneys' fees equal to six (6) times lodestar. *See, e.g., In re RJR Nabisco Sec. Litig.*, No. 88 Civ. 7905 (MBM), 1992

U.S. Dist. LEXIS 12702, at *16 (S.D.N.Y. Aug. 24, 1992) (Mukasey, J.) (awarding a percentage-based fee representing 6 times lodestar).[5]

Here, a lodestar cross-check fully supports the requested percentage fee. In this entirely contingent action that raised myriad complex issues, Lead Counsel devoted over 2,000 hours of attorney and other professional support time in the prosecution and investigation of the Action. Porritt Decl. at ¶79. Lead Counsel's total lodestar, derived by multiplying the hours spent by each attorney and paraprofessional by their current hourly rates, is $1,087,643.00. Porritt Decl. at ¶79.[6]

The requested fee of 33% of the Settlement Amount will equal $3,166,667 (plus interest), which represents a multiplier of 2.9. Thus, the 33% fee requested is supported by a lodestar cross-

---

[5] *See Davis*, 827 F. Supp. 2d at 185 (awarding fee representing a multiplier of 5.3, which was "not atypical" in similar cases); *Cornwell v. Credit Suisse Grp.*, No. 08-cv-03758, DKT No. 117 (S.D.N.Y. July 18, 2011) (awarding fee representing a multiplier of 4.7); *Telik*, 576 F. Supp. 2d at 590 ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (a 4.3 multiplier was appropriate in light of the contingency risk and the quality of the result achieved); *Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country").

[6] As set forth in the Declaration, the hourly rates are the same as, or comparable to, the rates submitted by my firm for lodestar cross-checks in other securities class action litigation for fee applications that have been granted within this Circuit and nationwide. *See, e.g., In re Credit Default Swaps Antitrust Litig.*, No. 13MD2476 (DLC), 2016 U.S. Dist. LEXIS 54587, 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016) (granting a fee award amounting to a lodestar multiplier of six, in a case where a successful, international law firm cited partner rates of $834 to $1,125 and associate rates of $411 to $714); *City of Providence*, 2014 U.S. Dist. LEXIS 64517, 2014 WL 1883494, at *13 (finding partner rates of $640 to $875 and non-partner attorney rates of $335 to $725 to be line with defense firms).

Both the Supreme Court and courts in this Circuit have long approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment that is inherent in class actions, inflationary losses, and the loss of access to legal and monetary capital that could otherwise have been employed had class counsel been paid on a current basis during the pendency of the litigation. *See In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989); *Veeco*, 2007 WL 4115808, at *9; *Missouri*, 491 U.S. at 284.

check.[7] Lead Counsel's requested 33% fee is well within the range of what courts in this Circuit and throughout the country commonly award in complex class actions such as this, when calculated as a percentage of the fund, and pursuant to a lodestar cross-check.

**E.      Lead Counsel's Litigation Expenses are Reasonable and Should Be Approved for Reimbursement**

Lead Counsel's fee application includes a request for reimbursement of Litigation Expenses that were reasonably incurred in furtherance of the claims on behalf of the Settlement Class. These expenses are documented expenses properly recovered by counsel. *See, e.g.*, *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'"); *FLAG Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class.").

As set forth in detail in the Porritt Declaration, Lead Counsel requests reimbursement of $199,463.67 in expenses for prosecuting the Action for the benefit of the Settlement Class, to be paid out of the Settlement Amount. The expenses are the types that are necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses include expert fees, mediation costs, travel expenses, photocopying, telephone charges for long distance or conference calls, postage and delivery expenses, and filing fees and notices. *See* Porritt Decl. at ¶¶82-83. The

---

[7] *See, e.g., Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."); *see also Steinver v. Am. Broad Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (approving a percentage fee award that corresponded to a multiplier of 6.85); *Buccellato v. AT&T Operations, Inc.*, No. 10-463, 2011 U.S. Dist. LEXIS 85699, at *3-*5 (N.D. Cal. June 30, 2011) (finding a multiplier of 4.3 was reasonable); *Craft*, 624 F. Supp. 2d at 1125 (approving a fee award that corresponded to a multiplier of 5.2); *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 586 F. Supp. 2d 732 (S.D. Tex. 2008) (5.2 multiplier); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2001) (multipliers of 4.5-8.5); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 198 (S.D.N.Y. 1997) (5.5 multiplier).

majority of the expert fees were attributable to Plaintiffs' expert economist, who assisted Lead Counsel in developing their arguments for class certification. In particular, Lead Counsel needed the expert to demonstrate that Resource Capital's securities traded in an "efficient market," a requirement for triggering the "fraud on the market" presumption applicable in securities fraud cases which was an issues on class certification.

The Notice informed potential Settlement Class Members that Lead Counsel would apply for reimbursement of its Litigation Expenses in an amount not to exceed $200,000.00. Villanova Decl., Ex. A. The expenses actually requested, $199,463.67, are in line with the amount stated in the Notice. To date, no Settlement Class Member has objected to the request for reimbursement of expenses.

### F.  Plaintiffs Should Be Awarded Incentive Awards

"Courts in this Circuit routinely award ... costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 272-73 (S.D.N.Y. 2012) (citing *Hicks*, 2005 WL 2757792, at *10); *Facebook*, 2015 WL 6971424, at *12.

Lead Counsel have requested incentive awards of $10,000 for Lead Plaintiff Douglas Drees and $5,000 for Plaintiff Allen Altman for collecting and producing relevant documentation and information, appearing for depositions, reviewing pleadings, and approving settlement. Each Plaintiff committed time to the prosecution of this lawsuit, as evidenced by their respective declarations. The incentive awards they seek are reasonable under the circumstances. Indeed, in this District, incentive awards in the $10,000 range have been found to be reasonable. *See*, *e.g.*, *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245-46 (E.D.N.Y. 2010) (awarding $25,000 to the lead plaintiff in a consumer class action and $5,000 to another plaintiff), *citing In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 131 (S.D.N.Y. 2009), *aff'd sub nom. Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010) (finding that incentive awards

of $45,000, $35,000, and lesser amounts were "within the range of what other courts have found to be reasonable, although on the higher end," and awarding $15,000 to the lead plaintiff); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 124-25 (S.D.N.Y. 2001) (approving an incentive award of $10,000 for class member). Such awards encourage the public policy goal of private prosecution securities frauds as described above. *See Tellabs*, 551 U.S. at 313 (citations omitted). Moreover, no objections to the incentive awards have been made. Accordingly, the incentive awards should be approved as reasonable.

## III.    CONCLUSION

Lead Counsel respectfully requests that the Court award attorneys' fees of 33% of the Settlement Amount; $199,463.67 in Lead Counsel's litigation expenses; and $10,000 for Lead Plaintiff Douglas Drees and $5,000 for Additional Plaintiff Allen Altman as incentive awards to Plaintiffs.

DATED: June 29, 2018                 Respectfully submitted,


By:    /s/ Adam Apton

Nicholas I. Porritt
Adam M. Apton
LEVI & KORSINSKY, LLP
1101 30th Street NW, Suite 115
Washington, DC 20007
Telephone:  202-524-4290
Facsimile:   202-333-2121

*Attorneys for Plaintiffs Douglas Drees and*
*Allen Altman and Lead Counsel for the Class*